ESTILL JUSTICE

*v.*

STATE COMPENSATION DIRECTOR,
AND GILBERT LUMBER COMPANY

(No. 12390)

Submitted January 13, 1965.    Decided February 23, 1965.

*Jeter, Jeter & Jeter, James C. Jeter,* for appellant.

*Pete Barrow, Jr.,* for appellee.

CAPLAN, JUDGE:

Upon the application of the claimant, Estill Justice, this Court, on November 23, 1964, granted an appeal from an order of the Workmen's Compensation Appeal Board, entered September 10, 1964, which affirmed a previous order of the Director holding that claimant had not made a proper showing for a reopening of his claim.  Claimant here asserts that he has made a proper showing for a reopening under the provisions of Code, 1931, 23-5-1(a) and 1(b), as

amended. He does not contend that his application for re-opening discloses "a progression or aggravation" of his condition but that "some other fact or facts which were not theretofore considered" by the Director in his former findings have appeared which entitle him to greater benefits than he is presently receiving.

The claimant, Estill Justice, on May 23, 1957, while in the employ of appellee Gilbert Lumber Company, and during the course thereof, sustained a fracture of his left hip. A claim was filed, which was held to be compensable, and the claimant was paid compensation benefits on a temporary basis. During a part of this time claimant was confined in a mental institution. On March 9, 1960, claimant was granted a fifteen per cent permanent partial disability award based upon the report of Doctor J. M. Carter. In his report Dr. Carter noted that claimant walked with a slight limp, due in part to the left leg being one-half inch shorter than the right leg. This award was protested by claimant and, upon a hearing, the report of Doctor C. B. Buffington was introduced in evidence in his behalf. Doctor Buffington found a one-inch shortening of the left leg and stated in his report: "This man has considerable shortening of this leg which will require a built up shoe or sooner or later he will have low back strain and difficulty from that * * * when one tries to look at the overall picture of this case, it is my impression that he has a fifty (50) per cent loss of this extremity, that is including the hip downward, or a thirty (30) per cent partial permanent disability."

The Director thereupon set aside his previous ruling of March 9, 1960, and granted claimant a twenty per cent permanent partial disability award. The claimant appealed this ruling to the Workmen's Compensation Appeal Board. The Board, being of the opinion that "the condition of the claimant has not been completely developed especially from a mental standpoint to determine what, if any, part of the claimant's disability may stem from his mental condition and if such disability had any causal connection with the claimant's injury", reversed the Director and remanded the case with instructions to have the claimant examined regard-

ing his mental disability and after such examination to evaluate the claim from an orthopedic and mental standpoint.

Pursuant to the remand, the Director referred the claimant to Doctor H. M. Hills, an orthopedist, and Doctor R. L. Heinlein, a psychiatrist. Doctor Hills found claimant to be totally disabled at the time of his examination and that in his present condition "he will never be able to return to work". Doctor Heinlein reported claimant "appears to have a total and probably permanent psychiatric disability. * * * It is impossible for me to directly relate a part or all of a schizophrenic illness of this type to a physical traumatic incident". In view of Doctor Heinlein's report, the Director requested a supplemental opinion from Doctor Hills as to the degree of permanent partial disability related to the fractured femur. Doctor Hills replied that in view of the claimant's psychiatric problem, surgery is probably not indicated and that he believed he was "entitled to 60% partial permanent disability in regard to the hip injury". On March 7, 1963, the Director granted claimant a sixty per cent permanent partial disability award. This award was accepted by all parties.

On February 7, 1964, claimant filed his petition for reopening and submitted the report of Doctor J. P. Seltzer. In his report Doctor Seltzer found claimant to be "markedly disabled" by reason of the nonunion of a fracture of the neck of the left femur. He further reported: "There is in addition to this problem, secondary low back strain due to the use of crutches and cane and necessity for limping. He has been awarded sixty per cent (60%) permanent partial disability which I believe is adequate for the left hip injury. However, because of the secondary problems involved in the low back area, I believe he should receive an additional ten per cent (10%)." The Director, on February 20, 1964, denied claimant's application for reopening on the ground that a proper showing therefor had not been made. This order was affirmed by the Appeal Board, which action gave rise to this appeal.

It readily appears from the evidence hereinabove detailed that claimant has received a sixty per cent permanent par-

tial disability award by reason of his "hip injury". All of the medical testimony relates to matters concerning psychiatric problems or matters concerning the hip, leg or extremity. Nowhere in the record does it appear that claimant was granted any disability for "low back strain", or that this condition was even considered in arriving at the sixty per cent award. On the contrary, the record clearly discloses that such award was arrived at by reason of the hip injury, as related in the report of Doctor Hills, and the report of Doctor Buffington who made a finding of disability based upon "this extremity, that is including the hip downward". Doctor Seltzer did find that the claimant had secondary low back strain due to the use of crutches and cane. While in his report Doctor Buffiington predicted the possibility of later development of low back strain, his "impression" as to the claimant's disability was limited to "this extremity, that is including the hip downward". There was no low back strain at that time. Consequently, such disability was not then considered.

Code, 23-5-1(a) and 1(b), as amended, provides for further adjustment of a claim upon the written application of a claimant showing a progression or aggravation in the claimant's condition, or some other fact or facts not theretofore considered by the Director in his former findings. Claimant, we believe, has made a prima facie showing for the reopening of his claim. We think that claimant, by producing evidence of low back strain, which disability had not theretofore been considered, has shown some fact not theretofore considered by the Director.

This Court consistently has held that it is the duty of the Director to construe liberally the evidence in favor of a claimant for workmen's compensation. *Buckalew* v. *State Compensation Director and The Dingle Clark Company,* 149 W. Va. 239, 140 S. E. 2d 453 (decided at this term); *McGeary* v. *State Compensation Director,* 148 W. Va. 436, 135 S. E. 2d 345; *Turner* v. *State Compensation Commissioner,* 147 W. Va. 145, 126 S. E. 2d 379; *Williams* v. *State Compensation Commissioner,* 127 W. Va. 78, 31 S. E. 2d 546; *Burgess* v. *State Compensation Commissioner,* 121 W. Va. 571, 5 S. E. 2d 804.

In *Bare* v. *State Compensation Director,* 148 W. Va. 760, 137 S. E. 2d 435, this Court said: "When a claimant makes timely application in writing for further adjustment of his claim and upon such application establishes progression or aggravation in his condition or a fact or facts not previously considered by the commissioner in his former findings which would entitle the claimant to greater benefits than he has already received, the claim should be reopened, and this Court will reverse an order of the appeal board affirming an order of the commissioner which denies a reopening of the claim." Similar language is found in *Johnson* v. *State Compensation Commissioner,* 128 W. Va. 37, 35 S. E. 2d 667.

Believing as we do that the claimant has made a prima facie showing entitling him to a reopening of his claim, the orders of the Appeal Board and the Director are reversed and set aside and this proceeding is remanded to the Director with directions to grant the petition of the claimant to reopen his claim.

*Reversed and remanded with directions.*