165 S.E.2d 609 (1969)
George E. PERRY
v.
STATE WORKMEN'S COMPENSATION COMMISSIONER, and Omar Mining Company.
No. 12783.
Supreme Court of Appeals of West Virginia.
Submitted January 14, 1969.
Decided February 4, 1969.
*610 Jeter, Jeter & Jeter, James C. Jeter, Charleston, for appellant.
Estep, Smith & Eiland, Edward I. Eiland, Logan, for appellees.
BROWNING, Judge.
Claimant, George F. Perry, was injured June 13, 1960, when a jack slipped from under a shuttle car on which he was working, striking him on the left leg and throwing him to the ground, causing injury to both legs and back. Sometime later, as a result of the injury, a ruptured intervertebral disc was removed. On November 27, 1963, claimant was awarded a 35% permanent partial disability. Subsequently, on December 23, 1964, upon a reopening of the claim, an additional 5% was granted, making a total of 40%. On August 8, 1965, the claimant again applied for a reopening of the claim. The claim was reopened by the commissioner, who after securing medical evidence, entered an order on January 19, 1966, denying any further award. This holding was protested by the claimant and hearings were held, at which further medical evidence was introduced and the testimony of the claimant taken. Thereafter, on June 10, 1968, the commissioner reversed his order of January 19, 1966, and granted claimant an award of total permanent disability. Upon appeal from this order by the employer, the Workmen's Compensation Appeal Board reversed the commissioner and held that claimant had been fully compensated for his injury, to which order this Court granted an appeal on November 25, 1968.
At the time of claimant's injury in 1960, he was fifty years of age, with an eighth grade education and had been employed in coal mines for more than thirty (30) years. He had previously been compensated for an injury to his hand in 1926 and a back injury in 1957. He has also received an award for silicosis in the second stage.
The medical evidence is substantially as follows: Upon attaining his maximum degree of improvement following the 1960 injury, claimant was referred to Dr. R. L. Anderson for examination. Dr. Anderson, on February 14, 1963, found certain limitation of motion of the spine and recommended a 25% award. Dr. Anderson also noted in a previous report that "The length of the lower extremities is equal." The commissioner made an award of 25% which was protested by claimant. At the hearings pursuant to claimant's protest, claimant introduced the reports of Dr. C. W. Stallard and Dr. F. R. Jamison. The employer introduced the reports of Drs. Russell Kessell and H. A. Swart. All of these physicians noted the limitation of motion, with some deformity, in claimant's back. Dr. Stallard found claimant to be totally and permanently disabled from doing any type of heavy manual labor. Dr. Jamison found "This claimant is unable to continue his mining work, and I believe that he is totally and permanently disabled." Dr. Kessell, as stated above, noting the limitations of motion and deformity, also observed that the "legs are equal in length," and recommended 25%. Dr. Swart observed the same objective findings, also finding ¼ inch atrophy of the left leg, and recommended 35%. The commissioner awarded claimant 35%, which the claimant accepted and was paid. All of the foregoing examinations were in 1963.
In September, 1964, claimant petitioned the commissioner for a reopening of his claim, submitting in support thereof the report of Dr. F. M. Viscuse dated September 11, 1964. Dr. Viscuse found the limitation of motion and deformity, ½ inch atrophy of the left leg and a ½ inch shortening of the left leg and recommended a total permanent disability award. The commissioner *611 reopened the claim and referred claimant to Dr. G. R. Callender. Dr. Callender noted an increased limitation of motion, although finding claimant improved in some respects, and recommended an additional 5% over that which he had already received. The commissioner granted claimant the additional 5%, making a total of 40%, which the claimant accepted and was paid.
On August 30, 1965, claimant again petitioned for a reopening, submitting a report of Dr. Viscuse, dated August 12, 1965, in which Dr. Viscuse stated: "This man's condition is worse than when he was paid his last award. I have compared my objective findings of today with the previous findings in this case and I now find that there has been a definite progression and aggravation of his condition. He now has * * * more residual pain and deformity * * * and more limitation of movement * * * In addition he now has pain and limitation of movement of the cervical spine and a 1 inch shortening of the left leg, a fact not previously considered in this case. I think that this man is unable to perform any type of work as a result of his injuries and definitely is totally disabled at this time." The claim was reopened and claimant was again referred to Dr. Callender who found some increase in the "lumbar lordosis", a 1/8 inch increase in the atrophy of claimant's left calf but otherwise found claimant's condition to be about the same as on his previous examination and did not recommend an increase over the 40% previously awarded claimant. The commissioner entered an order denying further benefits which claimant protested. At the hearings pursuant to the protest, claimant testified that since the 40% award he had secured employment as a plant guard in Ohio and had worked 8 six-hour shifts but was unable to continue because of his physical condition and pain. Also, several additional medical reports were introduced. For the claimant, Dr. F. R. Jamison, in a report dated May 12, 1966, stated: "* * * this claimants' general condition has become progressively more disabling. Claimant now has marked changes in locomotion, stability and increased loss in normal function of the spine. I believe this claimant is totally and permanently disabled." Dr. Stallard, in a report of March 8, 1966, found: "Unless this man can be rehabilitated where a good deal of walk, etc., is not required, he is totally and permanently disabled. He is certainly totally and permanently disabled from doing any heavy manual labor." Dr. Chillag in a report of April 18, 1966, said: "It is felt that he is disabled because of nerve root adhesions and scarring and can never do heavy work again. His permanent partial disability is 75%." Dr. G. F. Fordham reported, "* * * I think that he [claimant] is totally and permanently disabled at this time, from all work for which he is prepared by his experience and educational background * * *" The employer submitted further reports of Dr. Kessell, and Dr. Callender, both dated October 21, 1966. Dr. Kessell again found claimant's legs to be equal in length but stated: "This examiner is of the opinion that the claimants' condition at this time is not as good as it was at the time of his former examination. [August 26, 1963]. There is increased atrophy of his right leg. There is also a very definite psychological overlay. * * * The claimant's condition has deteriorated somewhat since he was examined by me, however, he has been paid a forty (40) per cent permanent partial disability which, in my opinion, is adequate for his back condition." Dr. Callender compared his present condition with that noted on previous examinations and stated: "I would see no indication at this time for an increase in the permanent partial disability award over and above that which was previously granted."
At the conclusion of the hearings, the commissioner reversed his former order and granted claimant a total permanent disability which, as heretofore stated, was reversed by the Appeal Board, the Appeal Board stating in their opinion, "The *612 present ruling [of the commissioner] is evidently based on the findings of Dr. C. W. Stallard and Dr. G. F. Fordham, both of whom find claimant totally disabled. Dr. Stallard's latest examination report is dated March 8, 1966, and is quite similar to his report of examination on January 16, 1963, when he also found claimant totally disabled. Dr. F. R. Jamison had found claimant totally disabled in 1963. * * * Undoubtedly claimant is totally disabled for work in the mines at this time; it is possible that he was so disabled in 1963 when no appeal was taken to the 40% award * * * We are of the opinion that this claim should not have been reopened * * *"
It is evident from an examination of the Workmen's Compensation law of this State that it was the intention of the legislature with regard to disability that an injured workman should be paid on what is denominated total temporary disability for the period of time necessary for him to reach maximum degree of improvement when he would be examined and given a permanent partial disability or a total permanent disability award. In practice it does not always work out that way. Such is evident in view of the many cases that come to this Court wherein an injured workman is given an initial permanent partial disability award, later applies for and is granted a small additional award, accepts that and again applies within the statutory period for a further award. The latter procedure is what happened in this case.
It is clear from the provisions of Code 23-5-1a and 1b, as amended, that after a claimant has accepted an award of permanent partial disability that it is not sufficient for him to show in an attempt to get his claim reopened that he has a disability greater than that for which he has been compensated. On the contrary, 1b provides that such a claim may be reopened only upon a showing of progression, aggravation or some new fact not theretofore considered by the commissioner which would entitle the claimant to greater benefits than he has already received. This man was paid on total temporary disability for a period of time and after examination was awarded a 25% permanent partial disability, which was protested by the claimant and he was, as heretofore noted, awarded a 35% permanent partial disability. Approximately a year later, upon a petition for reopening of the claim, an additional 5% permanent partial disability was awarded. There was no objection to this award by either the claimant or the employer. Less than a year thereafter claimant again applied for reopening of his claim. There is no question about the applicability of the statute to such a situation or to the decisions of this Court interpreting the act. In Taylor v. Workmen's Compensation Commissioner et al., 151 W.Va. 409, 151 S.E.2d 283, this Court again approved the rule laid down in Blevins v. Compensation Commissioner, 127 W.Va. 481, 33 S.E.2d 408, that it was not enough for a claimant who had been awarded and paid a permanent partial disability to show that he had not been adequately compensated to enable him to have the claim further considered. As we have repeatedly held there must be a "progression or aggravation or some new fact" not theretofore considered by the commissioner. Therefore the question before the commissioner, the appeal board and now this Court is one of fact not law.
In this case the employer has many cases on its side wherein it is held that this Court will not reverse an order of the appeal board upon an issue of fact unless the latter is clearly wrong. We have carefully looked then, not to the conclusions of the medical witnesses who testified or submitted reports but to their physical findings at the time of their examinations. It is the contention of the employer, and apparently that premise was accepted by the board, that inasmuch as some of the medical examiners found the claimant to be totally and permanently disabled prior *613 to the granting of the 40% award that he was foreclosed from subsequently producing evidence of a progression or aggravation of his condition. However, to repeat, as was stated in McGeary v. State Compensation Director, 148 W.Va. 436, 135 S.E.2d 345, it is not the conclusions of medical witnesses to which the commissioner and board must look but to the physical findings in their testimony or reports. Reference is made to the opinions in the Taylor and McGeary cases for comprehensive discussion of this question. It is evident from the report of Dr. Viscuse, heretofore quoted in part, that the claimant's condition had changed between the time that he was granted the 40% award and the examination by this physician. Among other things he states claimant has "a one inch shortening of the left leg, a fact not previously considered in this case." Dr. Callender found an increase in the "lumbar lordosis" and a one-eighth inch increase in atrophy of the claimant's left leg below the knee. Dr. Jamison found that the claimant's condition has become "more disabling". He stated that there are "marked changes in locomotion, stability and increased loss in normal function of the spine." It is true that some of these physicians had stated before the 40% award that the claimant was totally and permanently disabled but that does not forbid a consideration thereafter of their findings of further specific physical deterioration and disability.
It is the view of this Court upon a careful consideration of the medical evidence and other parts of this record that the Workmen's Compensation Appeal Board was clearly wrong in reversing the permanent total disability award made to this claimant and the Board's action therein is reversed.
This decision will be certified to the Workmen's Compensation Appeal Board and the Workmen's Compensation Commissioner.
Reversed.