256 S.E.2d 1 (1979)
Roger MITCHELL
v.
STATE WORKMEN'S COMPENSATION COMMISSIONER and Southern Appalachian Coal Company.
No. 14400.
Supreme Court of Appeals of West Virginia.
May 22, 1979.
Concurring Opinion July 13, 1979.
*4 George G. Burnette, Jr., Charleston, for appellant.
Love, Wise, Robinson & Woodroe, Joseph S. Beeson and M. Ann Bradley, Charleston, for appellee.
Michael T. Clifford and John E. Dorsey, Charleston, for SWCC. *2 *3
*5 MILLER, Justice:
This appeal by the claimant, Roger Mitchell, is from an adverse decision of the Workmen's Compensation Appeal Board which upheld the Workmen's Compensation Commissioner's order terminating the claimant's temporary total disability benefits as of August 30, 1976. Several questions are raised concerning the administrative procedures of the Workmen's Compensation Commissioner in the termination of temporary total disability awards.
Specifically, the following points are considered: (1) the Commissioner's authority to permit an employer to protest continuation of temporary total disability benefits where a timely protest was not made to the original award under W.Va.Code, 23-5-1; (2) the Commissioner's authority to terminate temporary total disability benefits without according the parties an evidentiary hearing; and (3) the effect of the 1976 amendments to W.Va.Code, 23-4-1c, in regard to overpayment of temporary total disability benefits.
A brief statement of the history of the claim is necessary in order to focus on the legal issues. The claimant sustained a low back injury on May 26, 1976, in the course of and resulting from his employment. He began medical treatment for the injury with a Dr. Bautista on the same day.
On July 14, 1976, the Commissioner held the claim compensable and awarded the claimant temporary total disability benefits. On July 27, 1976, Dr. Bautista advised the Commissioner that the claimant had reached maximum degree of improvement and requested that the claimant be evaluated for permanent partial disability. The doctor received no reply from the Commissioner and, on October 7, 1976, sent a letter to the claimant's employer in which he disclosed that he had given the claimant additional therapy and stated that the claimant had reached maximum degree of improvement as of August 30, 1976.
On September 22, 1976, the claimant had contacted the Workmen's Compensation Commissioner, advising that Dr. Bautista had indicated he could do nothing more for his condition and requesting a transfer to another doctor. The Commissioner approved the request and referred the claimant to a Dr. Hills, who first examined him in November, 1976. Dr. Hills reported to the Commissioner that he was starting the claimant on a therapy program, although he was somewhat skeptical of its effectiveness.
On November 2, 1976, the employer protested the continuation of temporary total disability benefits and urged the Commissioner to terminate the benefits as of August 30, 1976, the date on which Dr. Bautista stated claimant had reached maximum degree of improvement.
With the claim now under protest, the Commissioner continued to pay temporary total disability benefits pursuant to W.Va. Code, 23-4-1c. The claimant received treatment from Dr. Hills until September 26, 1977, when he was released to return to work. In February of 1977, Dr. Hills had requested an independent evaluation of the claimant, and he was eventually referred to a Dr. Seltzer in October 1977, who reported claimant had reached maximum degree of improvement and recommended a 5 percent permanent partial disability award.
The last hearing on the protest to the temporary total disability benefits was held in January, 1978, and the Commissioner, by order entered February 20, 1978, terminated the claimant's benefits as of August 30, 1976. In a divided opinion, the Appeal Board affirmed the Commissioner's order in November, 1978.

I

THE MEANING OF TEMPORARY TOTAL DISABILITY
We begin by observing that there is no statutory definition of the term "temporary total disability." By case law we have indicated that temporary total disability continues until the claimant reaches maximum degree of improvement, as stated in Perry v. State Workmen's Compensation Commissioner, 152 W.Va. 602, 607, 165 S.E.2d 609, 612 (1969):

*6 "[I]t was the intention of the legislature with regard to disability that an injured workman should be paid on what is denominated total temporary disability for the period of time necessary for him to reach maximum degree of improvement when he would be examined and given a permanent partial disability or a total permanent disability award. . . ."
Much the same language can be found in Dunlap v. State Workmen's Compensation Commissioner, W.Va., 232 S.E.2d 343, 344 (1977), and Dickerson v. State Workmen's Compensation Commissioner, 154 W.Va. 7, 11, 173 S.E.2d 388, 391 (1970).
In Dunlap, we noted that there was no "specific language that relates return to work as affecting total temporary disability benefits." 232 S.E.2d at 345. There, we found that a claimant receiving temporary total disability benefits who attempted to return to work did not lose resumption of the benefits when he was unable to continue working.
In 2 A. Larson, The Law of Workmen's Compensation (1976) § 57.10, at 10-510-8, we find this general statement in regard to classification of disability benefits:
"In the traditional four-way classification of disabilities, (1) temporary total, (2) temporary partial, (3) permanent partial, and (4) permanent total, the relative prominence of the two factors is markedly different. Temporary total (although the majority of claims are in this group) and temporary partial occasion relatively little controversy, since they are ordinarily established by direct evidence of actual wage loss. In the usual industrial injury situation, there is a period of healing and complete wage loss, during which, subject to any applicable waiting period, temporary total is payable. This is followed by a recovery, or stabilization of the condition, and probably resumption of work, and no complex questions arise. Permanent partial schedule awards, by contrast, are based on medical condition after maximum improvement has been reached, and ignore wage loss entirely. Fixed payments for loss of specified members are due even if the claimant during the period is back at work at higher wages than before. . . ."
Historically, the Commissioner in his award of temporary total disability benefits has notified the parties that temporary total disability benefits will continue "until he [the worker] has been certified for employment or until further proper order of the Commissioner . . . ."[1] From a practical standpoint, the terms "reaching maximum degree of improvement" and "being certified for employment" have rather similar, although not identical, meanings. As noted in Larson, supra, the period of "temporary total disability" usually extends through the recovery process. At the end of the recovery or healing process, maximum degree of improvement is reached, and the claimant is then certified to return to work.[2]
In this sense, the two terms are quite synonymous, and most courts use the terms rather interchangeably. See, e.g., Douglass v. Gresen Manufacturing Co., 300 Minn. 82, 217 N.W.2d 846 (1974); McAlear v. Arthur G. McKee & Co., 558 P.2d 1134 (Mont.1976); Inserra v. Village Inn Pancake House, 197 Neb. 168, 247 N.W.2d 625 (1976). An obvious exception is where the claimant, by reason of the severity of the residual disabilities from his injuries, is permanently and totally disabled and thus unable to return to work. In this situation, he *7 may have reached his maximum degree of improvement and be eligible for permanent disability rating, even though he is not certifiable for return to work.
As a general rule, we conclude that under the Workmen's Compensation Act, W.Va.Code, 23-1-1, et seq., temporary total disability benefits should be terminated where the Commissioner finds that a claimant either has reached his maximum degree of medical improvement from the industrial accident, or has been medically certified to return to work.

II

TERMINATION OF TEMPORARY TOTAL DISABILITY BENEFITS
The claimant urges that the Commissioner was in error in affording the employer a protest to continuation of temporary total disability benefits under W.Va.Code, 23-5-1. It is the claimant's position that the initial temporary total disability award was made on July 14, 1976, and the employer's protest was not made until November 2, 1976, well beyond the thirty-day period prescribed in W.Va.Code, 23-5-1, for filing objections to orders of the Commissioner.[3]
We agree with the claimant's position that the employer's protest should not have been considered under W.Va.Code, 23-5-1, since it was filed beyond the thirty-day period prescribed in that section. However, this does not mean that the employer was without a remedy to protest continuation of temporary total disability benefits, since a request for termination could have been filed or treated as filed under W.Va.Code, 23-5-1c.[4]
This Court's historic interpretation of W.Va.Code, 23-5-1c, as well as its counterpart for the employee, W.Va.Code, 23-5-1a, demonstrates that even though an award is made by the Commissioner and not objected to by the parties, the award may be modified if a change in the conditions on which the award was predicated can be shown. Blosser v. State Compensation Commissioner, 132 W.Va. 112, 51 S.E.2d 71 (1948), permitted an employer to seek a modification of a permanent total disability award.
On the other hand, we have consistently given a liberal interpretation to W.Va.Code, 23-5-1a, when a claimant applies for a modification of his disability award. See, e.g., Harper v. State Workmen's Compensation Commissioner, W.Va., 234 S.E.2d 779 (1977); Bragg v. State Workmen's Compensation Commissioner, 152 W.Va. 706, 166 S.E.2d 162 (1969); Justice v. State Compensation Director, 149 W.Va. 216, 140 S.E.2d 424 (1965).
The critical point is that while an award made by the Commissioner, unless objected to under W.Va.Code, 23-5-1, becomes final as to those operative facts which form the basis of the award, the provisions of W.Va.Code, 23-5-1c, were designed *8 to permit the modification of such awards where new facts are shown to warrant such modification. E.g., Blosser v. State Compensation Commissioner, 132 W.Va. 112, 51 S.E.2d 71 (1948). In the present case, the employer by his protest application was presenting new evidence of a change in the initial medical condition of the claimant in that he had now reached maximum degree of improvement. Consequently, it was the employer's contention that the claimant was not entitled to further temporary total disability benefits.
In order to demonstrate the procedural differences between protests filed under W.Va.Code, 23-5-1 and 23-5-1c, it is necessary to analyze their statutory terms. Under W.Va.Code, 23-5-1, the Commissioner is empowered to make an initial award without the necessity of a prior evidentiary hearing. The operative language in this section is:
"The commissioner shall have full power and authority to hear and determine all questions within his jurisdiction, but upon the making or refusing to make any award, or upon the making of any modification or change with respect to former findings or orders, as provided by section sixteen, . . . article four of this chapter, the commissioner shall give notice, in writing, to the employer, employee, claimant or dependent, as the case may be, . . ."
It can be seen that this Code section does not require the Commissioner to hold any evidentiary hearing prior to making the award. It is only after he makes or refuses to make an award or modification and receives a timely protest to that decision that he is required to afford an evidentiary hearing.
Under W.Va.Code, 23-5-1c, the Commissioner, on receipt of the employer's application for modification, "shall, after due notice to the employee, make such modifications or changes with respect to former findings or orders . . . as may be justified . . .." Again, we note that prior to the Commissioner's formal action on the application for modification by way of an order, W.Va.Code, 23-5-1c does not require him to afford the parties an evidentiary hearing on the issue of whether the award should be modified. There are, however, certain procedural due process rights which must be accorded where the modification terminates an existing disability benefit. The nature of these rights is discussed in the latter portion of this section.
In this case, we are concerned with the termination of temporary total disability benefits. We have noted the two distinct statutory procedures under which such benefits may be terminated. The first is by a timely protest to the initial award under W.Va.Code, 23-5-1. As we will discuss in more detail in the next section of this opinion, a protest under this Code section goes to the jurisdictional basis of the Commissioner's right to make the award. The issue in such proceeding is whether the claimant meets the statutory eligibility standards to obtain temporary total disability benefits. This Code section requires that once a protest is made within the thirty-day period, an evidentiary hearing must be held.
The second method of protesting continuation of temporary total disability benefits is where the employer obtains medical evidence which indicates the claimant has reached maximum degree of improvement or is certified to return to work. Here, the basic medical facts which originally support the temporary total disability award have changed and an application under W.Va.Code, 23-5-1c, is appropriate to terminate the benefits. There is no statutory time limit for the employer's filing under this section for termination of temporary total disability benefits, nor is there any requirement that an evidentiary hearing must be held before the temporary total benefits are terminated.[5]
*9 There are sound and salutary policy reasons for the distinction between W.Va.Code, 23-5-1 and -1c. Common sense dictates that an employer may well acknowledge that an injured employee initially has met the statutory jurisdictional prerequisites, and is therefore entitled to some temporary total disability benefits. In this event, the employer would have no desire to contest the initial jurisdictional issue under W.Va. Code, 23-5-1. If, however, he was aware that his failure to protest the initial award forever forecloses his ability to attack it on the basis that claimant has reached maximum degree of improvement, he would have no alternative but to protest on the theory that during the course of the administrative proceedings he could generate sufficient evidence to prove the lack of grounds for temporary total disability benefits.
This interpretation of these two statutes is also in accord with one of the essential purposes of the Workmen's Compensation Act as conceived by the Legislature, and that is to provide a simple and expeditious method of resolving the question of disputed claims arising from injuries occurring in the workplace. E. g., State ex rel. Conley v. Pennybacker, 131 W.Va. 442, 48 S.E.2d 9 (1948); Poccardi v. Ott, 82 W.Va. 497, 96 S.E. 790 (1918).
By failing to separate the employer's right to attack the initial jurisdictional grounds for the temporary total disability award under W.Va.Code, 23-5-1, from his subsequent right to protest continuation of the award under W.Va.Code, 23-5-1c, unnecessary disruption is injected into the administrative proceeding by according evidentiary hearings which are not statutorily required. The evidentiary proceeding provided for in W.Va.Code, 23-5-1, obtains only where the protest is made within thirty days from notification of the original award.
Where the employer does not contest the jurisdictional basis for the initial award, he still retains the right to object to a continuation of the temporary total disability benefits under W.Va.Code, 23-5-1c. Here, however, the proceeding is not evidentiary, but rather is based on the information transmitted to the Commissioner by the parties and that contained in his files.
The Commissioner, under a W.Va. Code, 23-5-1c, request for termination of temporary total disability, is required by statute to notify the employee that the employer is requesting a discontinuation of the benefits. This section does not require that the Commissioner afford the parties an evidentiary hearing on this issue. The Commissioner may also initially reject the employer's application under W.Va.Code, 23-5-1c, on the basis that it does not meet the standard set out in W.Va.Code, 23-5-1d.[6]
Notwithstanding the fact that the Commissioner is entitled to terminate temporary total disability benefits without affording the parties an evidentiary hearing in advance of the termination order, there are certain minimal due process procedures which must be followed before the termination under a W.Va.Code, 23-5-1c, procedure. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), sets the benchmark for procedural due process in regard to terminating disability benefits.
Mathews determined that a formal evidentiary hearing was not required prior to the termination of Social Security disability benefits. It does require that the claimant receive written notification of the reasons *10 the benefits are being considered for termination and be given an opportunity to supply additional information relevant to his continued entitlement to the benefits. The Court also recognized that a prompt evidentiary hearing was provided after the termination order under the applicable administrative procedures. A similar right is accorded under W.Va.Code, 23-5-1.
The fundamental point in Mathews was that the creation of a statutory disability benefit program by the government provides to those receiving the benefit a property entitlement which triggers certain procedural due process protection. We have recognized similar procedural due process protections where government action impairs or terminates a property or liberty interest. State ex rel. McLendon v. Morton, W.Va., 249 S.E.2d 919 (1978); Waite v. Civil Service Commission, W.Va., 241 S.E.2d 164 (1977); North v. West Virginia Board of Regents, W.Va., 233 S.E.2d 411 (1977). Because McLendon, Waite and North develop in some detail the rationale behind the procedural due process standards, we do not consider it necessary to elaborate further on this point. Both Waite and McLendon follow Mathews' balancing test, and because Mathews deals with a problem quite analogous to the present case we do not believe any extended discussion of this point is warranted.
Mathews' analysis of the competing factors between the private and governmental interests involved in terminating Social Security disability benefits is completely compatible with the facts in the present case. Indeed, there are several additional factors which we might add to the scale which would further serve to militate against a full evidentiary hearing before termination of the benefit. Here, there is the third-party interest of the employer, whose premium payments are directly tied to the compensation payments made on his account. W.Va.Code, 23-2-4. There is obviously a need to consider this interest in providing for an efficient means to reach a prompt resolution of the issue of continuation of temporary total disability. This factor was recognized in Klimko v. Virginia Employment Commission, 216 Va. 750, 759, 222 S.E.2d 559, 567 (1976), cert. denied, 429 U.S. 849, 97 S.Ct. 136, 50 L.Ed.2d 122.
Moreover, we recognize that there is a difference between the severance of Social Security disability benefits, which are awarded for life as in Mathews, and our Workmen's Compensation temporary total benefits, which currently can extend for a maximum period of 208 weeks. W.Va. Code, 23-4-6(c). Thus, we hold that affording the following procedural due process rights fully comports with our State and federal constitutional standards: (1) a prior written notice to the claimant of the reasons for the consideration of the termination of his temporary total disability benefits;[7] (2) the claimant's right to furnish within a reasonable period relevant countervailing information; and (3) the statutory right to an evidentiary hearing under W.Va.Code, 23-5-1, upon timely protest to an adverse order.
As we stated in note 2, supra, the claimant who has actually returned to work generally has, by such action, voluntarily terminated his right to further temporary total disability benefits. Consequently, the Commissioner is not required to send a prior notice of the termination, since the claimant's voluntary act has terminated the entitlement to the benefit.
The Commissioner, in addition to considering the material contained in the employer's application or request for termination of the temporary total benefits, should consider information supplied by the claimant in response to the notification sent him by the Commissioner. Additionally, the Commissioner may rely on information in the claimant's file. He is also empowered, but not required, under W.Va.Code, 23-4-8, to direct the claimant to an independent *11 medical evaluation.[8] It is from these sources that the Commissioner will decide whether to discontinue the temporary total benefits.[9]
The foregoing is a general analysis of the statutory and procedural due process law as it bears on the administrative processing of this phase of disability awards. We summarize the salient points as follows:
(1) Under W.Va.Code, 23-5-1, the West Virginia Workmen's Compensation Commissioner has broad powers in making, refusing or modifying awards. These actions are taken without the necessity of advance evidentiary hearings, but are based upon credible evidence furnished the Commissioner through his reporting forms, information supplied by the parties and independent medical evaluations ordered by the Commissioner under W.Va.Code, 23-4-8.
(2) W.Va.Code, 23-5-1c, permits an employer, upon an application containing credible evidence, to request that the Commissioner terminate temporary total disability benefits. Under this section, evidentiary hearings are not required to be held by the Commissioner until an order terminating the benefits is entered and timely objection to the order has been made. However, procedural due process standards mandate that the Commissioner give the claimant advance notification of the reasons his temporary total disability benefits are being considered for termination and a reasonable opportunity to supply relevant information on the issue, except where the claimant has voluntarily returned to work.

III

W.VA.CODE, 23-4-1c AND THE OVERPAYMENT PROBLEM
There appears to be some confusion on the part of the Commissioner and the parties with regard to that portion of W.Va. Code, 23-4-1c, which provides for crediting the employer's account where overpayment of temporary total disability benefits is made. This same section contains a reciprocal provision requiring the Commissioner to collect from the claimant such overpayments.[10]
*12 The Commissioner's view is that this section requires that, once the employer protests the continuation of temporary total disability payments, the Commissioner must continue the payments until he enters an order terminating them. As a result, the Commissioner in his order finds the payments should have been discontinued as of some past date, which is usually the date of a particular doctor's finding that the claimant had reached maximum degree of improvement. The result is that the claimant is then charged with an overpayment of temporary total disability benefits.
This appears to be the Commissioner's approach to W.Va.Code, 23-4-1c (1978), regardless of whether the employer's protest is filed under W.Va.Code, 23-5-1, or under W.Va.Code, 23-5-1c. Yet, by specific language, W.Va.Code, 23-4-1c only applies "in the event that an employer files a timely objection to any finding or order of the commissioner, as provided in section one, article five of this chapter [23-5-1] . .."
The distinction between W.Va. Code, 23-5-1, and W.Va.Code, 23-5-1c, is perhaps best illustrated by their substantive differences. A protest by the employer to a temporary total disability award under W.Va.Code, 23-5-1, has to be made within thirty days from receipt of the order awarding the benefits. This type of protest is ordinarily made where the employer believes that the claimant was not injured in the course of and resulting from covered employment. The central purpose of the protest is to initially contest the claimant's right to any disability benefitsthat is, the claimant does not meet the various statutory prerequisites to entitle him to compensation.[11]
If the employer is found to be correct in his position, then the Commissioner was initially without lawful jurisdiction to award such benefits. Consequently, W.Va.Code, 23-4-1c, requires the Commissioner to credit the employer's account. Since the claimant was found not to be lawfully entitled initially to obtain disability benefits, he is required to refund the disability benefits.
Thus, it can be seen that an employer's protest to the initial temporary total disability award under W.Va.Code, 23-5-1, is directed at the jurisdictional foundation for the award. A claimant is given prompt notice of this protest and is thereby put on notice that the essential dispute centers on his lawful right to obtain any temporary total disability benefits based on the contention he was not initially lawfully entitled to obtain the benefits.
If the claimant elects to retain the temporary total benefit payments during the period the issue is being litigated in the adversary proceedings under W.Va.Code, 23-5-1, he does so with the knowledge that should he ultimately lose on this issue he will be required to refund the funds so received, or have them deducted from any future disability benefits. This is because the Commissioner has determined that the "claimant was not lawfully entitled to benefits paid to him pursuant to a prior decision. . ." under W.Va.Code, 23-4-1c. [Emphasis supplied]
The other category involves those protests filed under W.Va.Code, 23-5-1c, as illustrated by the present case. Here, the employer does not initially challenge the lawfulness of the temporary total disability award under W.Va.Code, 23-5-1, because he believes it to be jurisdictionally proper. At a later period, however, he obtains evidence *13 which leads him to conclude the claimant has now reached maximum degree of improvement and should be terminated from temporary total disability. In this situation, he files a protest under W.Va. Code, 23-5-1c. This proceeding does not result in an evidentiary hearing, but in an administrative determination by the Commissioner on whether to terminate temporary total disability based on the fact that maximum degree of improvement has been reached.
Here, the issue is primarily medical, as distinguished from jurisdictional. If the Commissioner believes, based on current credible evidence, that temporary total disability benefits should be discontinued, his award terminates those benefits. However, W.Va.Code, 23-4-1c, does not apply because the employer's protest does not involve a jurisdictional entitlement issue, nor was the protest made within the thirty-day period required by W.Va.Code, 23-5-1. Consequently, the Commissioner's decision does not involve the initial lawfulness of the award.
We recognize that an employer may initially protest temporary total disability benefits under W.Va.Code, 23-5-1, with a view toward defeating the claimant's medical right to a continuation of those benefits. The Commissioner, however, is ultimately controlled by the substance and not the procedural form of the employer's protest in determining whether W.Va.Code, 23-4-1c applies. If he determines at the end of the hearings that there was a proper jurisdictional basis for the original award of temporary total disability and the real issue was whether the claimant reached maximum degree of his improvement, his order may cut off temporary total disability, but it cannot find an overpayment since the original award was not unlawful; that is, without jurisdiction initially.[12]
The point is that the overpayment provisions of W.Va.Code, 23-4-1c, apply only where the Commissioner determines in a W.Va.Code, 23-5-1, proceeding, that the claimant was not lawfully entitled to the temporary total disability benefits originally by virtue of the fact that the claim did not jurisdictionally qualify.
The difference between these two sections also controls the form of the order that the Commissioner is empowered to enter when he terminates temporary total disability benefits. In a W.Va.Code, 23-5-1, proceeding, he finds that the claimant was not initially entitled to temporary total disability benefits because the claimant did not meet the initial jurisdictional requirements. In other words, the claimant was not originally lawfully entitled to the benefits and consequently, under W.Va.Code, 23-4-1c, the employer is fully credited for all payments made and the claimant is charged with the money received as of the date of the original award. In effect, the order finds that the original award was void.
In a proceeding under W.Va.Code, 23-5-1c, the issue is not jurisdictional, but centers on when the temporary total disability medically ceased to exist. We have traditionally held that the Commissioner and not the doctors makes the ultimate factual determination of the degree of disability based on medical information contained in the claimant's file. See, e.g., Stewart v. State Workmen's Compensation Commissioner, 155 W.Va. 633, 186 S.E.2d 700 (1972); Sisk v. State Workmen's Compensation Commissioner, 153 W.Va. 461, 170 S.E.2d 20 (1969); Haines v. Workmen's Compensation Commissioner, 151 W.Va. 152, 150 S.E.2d 883 (1966).
Obviously, the date of the Commissioner's order is the date of his decision, because it is not until the Commissioner reviews the information in the claimant's file that he actually exercises his administrative *14 decision-making function. It is not proper for the Commissioner to adopt the date of a particular physical examination or physician's report as a date for cutting off temporary total disability benefits, since the Commissioner makes his determination based on all the medical evidence in the file. Consequently, in a proceeding under W.Va. Code, 23-5-1c, to terminate temporary total disability benefits, the proper date for termination of the benefits is the date of the Commissioner's termination order. In other words, the Commissioner's order should not terminate the benefits retroactively.

IV

RELIEF GRANTED
In the present case, the narrow issue between the employer and the employee is the appropriate date for termination of temporary total disability benefits. The claimant contends that the date should be September 26, 1977, when Dr. Hills certified him to return to work. The employer urges that the Commissioner was correct in terminating the benefits on August 30, 1976, the date Dr. Bautista stated claimant had reached maximum degree of improvement.
The problem is that neither the parties nor the Commissioner has correctly interpreted the statutory framework. The major error was processing the employer's protest against continuation of temporary total disability benefits under W.Va.Code, 23-5-1. This was not proper, since the protest was filed more than thirty days after the initial award of temporary total disability benefits. As a result of this error, the Commissioner permitted the parties to have an evidentiary hearing on the issue instead of determining it administratively.
Overlaid on all of this was the fact that W.Va.Code, 23-4-1c, in regard to overpayment of temporary total disability benefits had never been construed by this Court. It is obvious that none of the parties, including the Commissioner, can be faulted for failing to anticipate this Court's present holding.
As we have previously stated, the parties were not initially entitled to an evidentiary hearing on the issue of termination of temporary total disability benefits, since the issue raised was medical and not jurisdictional, and therefore came under W.Va. Code, 23-5-1c. Under the facts of this case, the claimant apparently returned to work on September 26, 1977, the date he was certified to return to work. This automatically stopped the temporary total disability benefits as of that date, as reflected by the payment record in this case.
Consequently, in this case we only have an overpayment issue between the August 30, 1976, and September 26, 1977, dates. The medical evidence clearly indicates that Dr. Hills treated the claimant up to September 26, 1977,[13] and the Commissioner should have terminated the disability payments as of this date.
The Commissioner's ruling of February 20, 1978, and the Appeal Board's order of November 29, 1978, confirming the same, are hereby reversed and the case is remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
McGRAW, Justice, concurring:
I am prompted to concur in the majority opinion to briefly emphasize the importance of this case to the operation of an efficient and fair Workmen's Compensation system.
The majority recognizes that once the government establishes a program distributing benefits, it must employ certain basic procedures to ensure that the operation of the system does not undermine the human dignity and self-respect of persons who seek those benefits. A claimant's benefits can not be terminated without affording certain minimal procedural due process protections. In regard to the issue of how much due process is due, the majority's accommodation of the competing considerations in this case is supported by law, logic, and common sense.
*15 Assuring that all parties to the compensation system are accorded their constitutional rights and treated fairly is significant and important for yet another reason. The system is the exclusive legal mechanism available for compensating victims of negligently caused occupational accidents, as well as for injuries occurring in the course of and the result of employment. See, Mandolidis v. Elkins Industries, Inc., W.Va., 246 S.E.2d 907 (1978). The system thus substantially restricts an employee's explicit, fundamental constitutional right of access to the courts. See, W.Va. Const. Art. III § 17.
This Court has been especially concerned with appeals in Workmen's Compensation cases and has been sensitive to the claims made by injured workmen and their dependents. This fact has not gone unnoticed. See, e.g., Flannery, Beeson, Bradley, Goddard, "The Expanding Role of the West Virginia Supreme Court of Appeals in the Review of Workmen's Compensation Appeals" 81 W.Va.L.Rev. 1 (1978). This case should be seen as but one in succession of important, beneficially corrective, remedial pronouncements by this Court in this area of the law. In the long run, this decision should prove beneficial to all participants of the compensation system and to the general public.
NOTES
[1] It appears that the Commissioner, in awarding temporary total disability benefits, also on occasion uses the phrase "until he has returned to work or has been certified by his attending physician for employment." This Court has not had occasion to consider the impact of the foregoing language used by the Commissioner in his order awarding temporary total disability benefits.
[2] The term "certified to return to work" applies to the situation where the claimant actually returns to work. This actual return to work would terminate the right to temporary total disability benefits, subject to the exception stated in Dunlap v. State Workmen's Compensation Commissioner, W.Va., 232 S.E.2d 343 (1977), that the claimant's return to work was premature in that his medical condition prevented him from continuing to work.
[3] W.Va.Code, 23-5-1, states in material part:

"The commissioner shall have full power and authority to hear and determine all questions within his jurisdiction, but upon the making or refusing to make any award, or upon the making of any modification or change with respect to former findings or orders, as provided by section sixteen, . . . article four of this chapter, the commissioner shall give notice, in writing, to the employer, employee, claimant or dependent, as the case may be, of his action, which notice shall state the time allowed for filing an objection to such finding, and such action of the commissioner shall be final unless the employer, employee, claimant or dependent shall, within thirty days after the receipt of such notice, object, in writing, to such finding. Upon receipt of such objection the commissioner shall, within fifteen days from receipt thereof, set a time and place for the hearing of evidence. . . ."
[4] W.Va.Code, 23-5-1c:

"In any case wherein an employer makes application in writing for a modification of any award previously made to an employee of said employer, and such application discloses cause for a further adjustment thereof, the commissioner shall, after due notice to the employee, make such modifications or changes with respect to former findings or orders in such form as may be justified, and any party dissatisfied with any such modification or change so made by the commissioner, shall upon proper and timely objection, be entitled to a hearing as provided in section one [§ 23-5-1] of this article."
[5] The Commissioner also has the authority to invoke the issue of terminating temporary total disability benefits on his own initiative, when he has credible information in the claimant's file that maximum degree of improvement is reached or the claimant is certified to return to work.
[6] W.Va.Code, 23-5-1d, states:

"If in any such case it shall appear to the commissioner that such application fails to disclose some fact or facts which were not theretofore considered by the commissioner in his former findings, and which would entitle such employer to any modification of said previous award, the commissioner shall, within sixty days from the receipt of such application, notify the claimant and employer that such application fails to establish a just cause for modification of said award. Such notice shall be in writing and shall state the time allowed for appeal to the appeal board from such decision of the commissioner. The employer may, within thirty days after receipt of said notice, apply to the appeal board for a review of such decision.
[7] W.Va.Code, 23-5-1c, presently requires the Commissioner to send a notice to the employee that the employer is requesting a modification or termination of the benefit.
[8] W.Va.Code, 23-4-8, provides in part:

"The commissioner shall have authority, after due notice to the employer and claimant, whenever in his opinion it shall be necessary, to order a claimant of compensation for a personal injury other than occupational pneumoconiosis to appear for examination before a medical examiner or examiners selected by the commissioner; and the claimant and employer, respectively, shall each have the right to select a physician of his or its own choosing and at his or its own expense to participate in such examination."
[9] The goal of administrative economy and expeditious handling of claimants strongly suggests that the Commissioner might, in appropriate cases in which he terminates temporary total disability benefits, also make an award for any permanent disability benefits that may be due the claimant. Here, the Commissioner, before he terminated the temporary total disability benefits, had a report from Dr. Seltzer evaluating the claimant's permanent disability at 5 percent, so that the Commissioner, upon terminating the temporary total disability benefits, could have made a 5 percent permanent partial disability award. Claimants might be less inclined to protest termination of temporary total disability benefits if they received a contemporaneous permanent disability award. Certainly, the two issues are inextricably entwined from a medical standpoint, and if both issues are treated by the Commissioner in the same order or by contemporaneous ones, the parties' protests can be heard together. We see nothing in the Workmen's Compensation statutes which precludes the Commissioner from adopting this administrative approach.
[10] W.Va.Code, 23-4-1c, in pertinent part:

"In the event that an employer files a timely objection to any finding or order of the commissioner, as provided in section one, . . . article five of this chapter, with respect to the payment or continued payment of temporary total disability benefits and those expenses as outlined in subdivision (a), section three . . . of this article, as provided herein, the commissioner shall continue to pay to the claimant such benefits and expenses during the period of such disability unless it is subsequently found by the commissioner that the claimant was not entitled to receive the temporary total disability benefits and the expenses provided for in subdivision (a), section three of this article, or any part thereof, so paid, in which event the commissioner shall, where the employer is a subscriber to the fund, credit said employer's account with the amount of the overpayment;. . . If the final decision in any case determines that a claimant was not lawfully entitled to benefits paid to him pursuant to a prior decision, such amount of benefits so paid shall be deemed overpaid. The commissioner may recover such amount by civil action or in any manner provided in this Code for the collection of past-due payment and shall withhold, in whole or in part, as determined by the commissioner, any future benefits payable to the individual and credit such amount against the overpayment until it is repaid in full."
[11] Some other jurisdictional prerequisites are the timeliness of the filing under W.Va.Code, 23-4-15, or reapplication under W.Va.Code, 23-4-16, or whether the injury was "self-inflicted" or caused by "willful misconduct, willful disobedience to such rules and regulations. . ." under W.Va.Code, 23-4-2.
[12] Obviously, an employer who wishes to contest only the medical issue of whether claimant has reached maximum degree of improvement is well advised not to invoke the W.Va.Code, 23-5-1, procedure, since its adversary nature prohibits the Commissioner from making a more expeditious administrative resolution of the issue under W.Va.Code, 23-5-1c.
[13] The claimant's original physician, Dr. Bautista, had not seen the claimant since August of 1976, and would not have been aware of the claimant's condition while he was under treatment with Dr. Hills.