298 S.E.2d 893

**Harry D. HONAKER**

v.

**STATE WORKMEN'S COMPENSATION COMMISSIONER and Carbon Fuel Co.**

**Janet Sue McCALLISTER**

v.

**STATE WORKMEN'S COMPENSATION COMMISSIONER and Southern Appalachian Coal Co.**

**Nos. 15615, 15587.**

Supreme Court of Appeals of West Virginia.

Dec. 15, 1982.

Affirmed as to first claimant's case; reversed and remanded with directions as to second claimant's case.

Timothy G. Leach, Charleston, for appellants Harry D. Honaker and Janet Sue McCallister.

Kim Brown Poland and George W.S. Grove, Jr., Love, Wise, Robinson & Woodroe, Charleston, for appellee Carbon Fuel Co.

M. Ann Bradley and Joseph M. Price, Love, Wise, Robinson & Woodroe, Charleston, for appellee Southern Appalachian Coal Co.

MILLER, Chief Justice:

█ In these consolidated Workmen's Compensation appeal cases, we determine whether the commissioner has correctly applied *Mitchell v. State Workmen's Compensation*, 163 W.Va. 107, 256 S.E.2d 1 (1979), where we held that the commissioner has authority to invoke the issue of terminating total temporary disability on his own initiative in certain circumstances.[1] We will discuss each case separately.

## I.

### CLAIM OF HARRY HONAKER

The claimant Honaker appeals from a final order denying his motion for payment of temporary total disability benefits from July 15, 1980, until the date he returned to work, August 20, 1980. Honaker sustained a compensable back injury on February 12, 1980. He filed for benefits and his claim was held compensable without objection by the employer. The commissioner commenced payment of temporary total disability benefits. The claimant was treated by Dr. S.S. Rikhy, who after examining him on May 12, 1980, certified on Commissioner's Form No. WC–219 that he would be able to return to work on July 15, 1980.

Upon receipt of this information from Dr. Rikhy, the commissioner on May 21, 1980, issued an order which informed the claimant that he had been awarded an additional period of temporary total disability benefits payable up to, but not including July 14, 1980. It also advised the claimant that if he did not submit an up-to-date medical report on the form enclosed (WC–219) "prior to the expiration of your present temporary total disability award or within thirty (30) days from the date of this order, whichever shall later occur," then his temporary total disability benefits would cease and his claim as to temporary total disability would be closed.

On June 16, 1980, Honaker sought authorization to change physicians and see Dr. R.L. Anderson. This request was approved on July 8, 1980. Meanwhile by letter of June 10, 1980, the commissioner referred the claimant to Dr. C.A. Stevenson who examined the claimant on July 15, 1980. Dr. Stevenson found no permanent disability and recommended Honaker lose weight. On August 18, 1980, the claimant was examined by Dr. Anderson who released him to return to work on August 19, 1980. He returned to work on August 20, 1980.

The claimant on appeal argues that the commissioner's May 21 order was improper under *Mitchell*, since it placed the burden on him to supply additional medical evi-

---

1. The full text of Syllabus Point 1 of *Mitchell* is: "Under the Workmen's Compensation Act, W.Va.Code, 23–1–1, *et seq.*, temporary total disability benefits should be terminated where the Commissioner finds that a claimant either has reached his maximum degree of medical improvement from the industrial accident, or has been medically certified to return to work."

dence of his temporary total disability or otherwise have his benefits terminated at a designated future date. We believe claimant's argument misconceives what we said in *Mitchell*.

Our decision in *Mitchell* was directed at several problems that had arisen under the Workmen's Compensation Act procedures. The first was the practice of permitting employers to protest payment of temporary total disability and thereby trigger an evidentiary hearing over whether the claimant was entitled to a continuation of the benefits. These evidentiary hearings were often prolonged because of continuances and the inability to schedule physicians' testimony. This practice would culminate in the submission of the various hearings to the commissioner who would then decide whether temporary total disability benefits should be terminated.

It was also the past practice for the commissioner, if the decision were made to terminate the temporary total disability benefits, to do so by an order which would retroactively terminate the benefits to a past date; this was usually tied to a doctor's report which stated that the claimant was not entitled to further temporary total disability benefits. This system created enormous delays and disturbed the orderly handling of claims.

Moreover, because W.Va.Code, 23–4–1c, required the commissioner to continue to pay temporary total disability benefits during the time of the protest and also required in the event of an adverse ruling to the claimant that he repay the excess award, further inequities occurred. A claimant whose temporary total disability

was protested under the old procedure might not have this issue resolved for a year or more. When it was resolved against him, the order would retroactively terminate his benefits and he would then be ordered to pay the deficiency.

In *Mitchell*, we concluded that the interest of all parties would be better served if the commissioner were authorized to terminate temporary total disability benefits based on medical evidence in the file and supplied by the parties. We also recognized the necessity of some procedural due process standards, which we summarized in *Mitchell*:

> "Thus, we hold that affording the following procedural due process rights fully comports with our State and federal constitutional standards: (1) a prior written notice to the claimant of the reasons for the consideration of the termination of his temporary total disability benefits; (2) the claimant's right to furnish within a reasonable period relevant countervailing information; and (3) the statutory right to an evidentiary hearing under W.Va.Code, 23–5–1, upon timely protest to an adverse order." 163 W.Va. at 120, 256 S.E.2d at 10. (Footnote omitted)

In Syllabus Points 2 and 3 of *Mitchell*, we recognized that the commissioner under W.Va.Code, 23–5–1 and 1c, had the power to make, refuse and modify awards based on credible evidence supplied by the parties, the commissioner's own forms and independent medical evaluations.[2] We also held that temporary total disability benefits could be terminated without the necessity

**2.** Syllabus Points 2 and 3 of *Mitchell* stated:
> "2. Under W.Va.Code, 23–5–1, the West Virginia Workmen's Compensation Commissioner has broad powers in making, refusing or modifying awards. These actions are taken without the necessity of advance evidentiary hearings, but are based upon credible evidence furnished the Commissioner through his reporting forms, information supplied by the parties and independent medical evaluations ordered by the Commissioner under W.Va.Code, 23–4–8.
> "3. W.Va.Code, 23–5–1c, permits an employer, upon an application containing credible evidence, to request the Commissioner to

terminate temporary total disability benefits. Under this section, evidentiary hearings are not required to be held by the Commissioner until an order terminating the benefits is entered and timely objection to the order has been made. However, procedural due process standards mandate that the Commissioner give the claimant advance notification of the reasons why his temporary total disability benefits are being considered for termination and a reasonable opportunity to supply relevant information on the issue, except where the claimant has voluntarily returned to work."

of a prior evidentiary hearing if certain procedural safeguards were followed.[3]

■ Following *Mitchell,* the commissioner in this case has sought to comply with its directions by utilizing a notice order that is keyed to the medical reporting form used by the claimant's doctor. When the commissioner received the claimant's medical form indicating that the claimant's temporary total disability would end on July 15, 1980, the commissioner then sent to the claimant the notice order. This order advised the claimant that his temporary total disability benefits would terminate as of July 15, 1980, unless further medical evidence was received to warrant continuation of the benefits. The order gave the plaintiff until that date to supply any additional medical evidence to show that continuation of temporary total disability benefits was warranted. We believe the notice period was reasonable. From a factual standpoint, although the claimant was examined by two other doctors after the notice order, neither was of the view that temporary total disability status was warranted. Consequently, we are of the view that the commissioner was correct in terminating the temporary total disability benefits in this claim.

## II.

### CLAIM OF JANET SUE McCALLISTER

The claimant Janet Sue McCallister suffered a low back sprain on October 13, 1977, in the course of and as a result of her employment with Southern Appalachian Coal Company. The Workmen's Compensation Commissioner concluded that the injury was compensable on a temporary total basis and ordered that the claimant be paid temporary total disability benefits.

The claimant was treated by Dr. D.S. Raja, who, in a report dated July 27, 1979, released her to return to work. That report apparently was not received by the commissioner until September 4, 1979. After learning of Dr. Raja's report, the employer wrote the commissioner and requested that the claimant's temporary total disability benefits be terminated under *Mitchell.*

Upon receiving the employer's letter, the commissioner on November 8, 1979, sent the claimant a "Notice of Termination" indicating that the commissioner was considering terminating her temporary total disability benefits because Dr. Raja had released her to return to work. The notice informed the claimant that she had thirty days from receipt of the notice or until the termination date to provide medical or other evidence, in writing, to show just cause why her claim on a temporary total disability basis should not be closed.[4]

Following receipt of the commissioner's order-notice, the claimant transmitted a report from Dr. Raja dated December 10, 1979, which stated: "This is to certify that Mrs. Janet McCallister is under my care and is being treated for ruptured disc with right side sciatica. She will be disabled for an approximate period of 8 weeks."

After receiving Dr. Raja's December 10, 1979, report, the commissioner concluded that it was insufficient to justify the continued payment of temporary total disability benefits, and by order dated December 13, 1979, terminated such benefits. The claimant protested, and a hearing was scheduled.

At the hearing conducted on April 17, 1980, the claimant testified that in July 1979 Dr. Raja had released her to return to work on a trial basis and that after the trial release she remained under his care. When she approached the employer about resuming work, the employer sent her to a clinic for a physical examination. She testified that the doctor at the clinic concluded that because of her back she was in no condition to return to work, and consequently the employer refused to take her back.

---

**3.** *See* Syllabus Point 3 of *Mitchell, id.*

**4.** The notice of termination form utilized in this case was an earlier version of the one utilized in the Honaker claim but basically met *Mitchell's* requirements.

At a further hearing conducted on August 19, 1980, Dr. Raja, the claimant's treating physician, testified that although the claimant had a minor backache on July 27, 1979, she demonstrated considerable improvement over her prior condition, and since she expressed a desire to return to work, he released her to return. When he examined her on December 10, 1979, she had a recurrence of severe low back pain radiating to the back of the right hip and thigh and knee. This was consistent with the physical findings. At that time, Dr. Raja concluded that the claimant was definitely unable to work because of a recurrence of her symptoms.

Dr. Raja also stated that at his May 5, 1980, examination of the claimant, she had been experiencing severe low backache and she had marked objective restrictions in her range of movements and tenderness at the right side of the lumbo-sacrioliac. On June 30, 1980, Dr. Raja noted that the claimant had persistent low backache and that physical findings relating to condition were unchanged from his previous examination. On July 7, 1980, she again was suffering from low backache. Finally, on August 5, 1980, Dr. Raja concluded that the claimant was unlikely to improve further, that in effect, she had reached maximum improvement.

After Dr. Raja testified on August 19, 1980, the claimant's attorney wrote the commissioner on October 23, 1980, and petitioned that the claim be reopened on a temporary total disability basis. In support of his petition, he referred to the testimony of Dr. Raja at the hearing.

■ Under the foregoing facts, we believe the commissioner erred in terminating the claimant's temporary total disability benefits. The claimant had supplied an additional report from the treating physician, Dr. Raja, prior to the date set for termination of the temporary total disability benefits, which showed that she was still temporarily disabled. This was in accordance with the procedures which we outlined in *Mitchell* and have discussed earlier in the Honaker case.

We also note that the claimant's position that she had not actually reached maximum improvement was amply borne out at the subsequent hearings, and we believe that her temporary total disability condition existed until August 5, 1980. Under the status of the evidence, both the commissioner and Appeal Board were clearly wrong in holding that claimant's temporary total disability benefits were properly terminated. Our view is that she was entitled to such benefits through August 5, 1980.

■ As a further procedural matter, we conclude that it was not necessary for the claimant's attorney to petition to reopen the claim at the conclusion of the hearings. He had already protested the commissioner's order of December 13, 1979, which terminated the temporary total disability benefits. We also observe that while we had no occasion in *Mitchell* to speak to all of the administrative procedures that the commissioner might adopt, we believe that once the claimant supplies additional medical evidence in support of continued temporary total disability, if the commissioner rejects such evidence, such rejection should be done by an order. By such an order the commissioner will enable the claimant to protest the decision to terminate the temporary total disability benefits and thereby afford the claimant a right to an evidentiary hearing. This was the procedure followed in the McCallister claim.

For the reasons stated, the decision of the Workmen's Compensation Appeal Board in the Honaker case is affirmed, and the decision in the McCallister case is reversed with directions that the claimant in that case be awarded temporary total disability benefits through August 5, 1980.

Case No. 15615—Affirmed.

Case No. 15587—Reversed and Remanded with Directions.