315 S.E.2d 563

Jimmy Lee BUTCHER

v.

**STATE WORKERS' COMPENSATION COMMISSIONER and Kanawha Coal Co.**

**No. 15941.**

Supreme Court of Appeals of West Virginia.

Nov. 14, 1983.

Dissenting Opinion Jan. 31, 1984.

Timothy G. Leach, Charleston, for appellant.

Hall, Albertson & Jones and E. Forrest Jones, Jr., Charleston, for appellee.

MILLER, Justice:

This appeal by the claimant, Jimmy Lee Butcher, from an order of the Workers' Compensation Appeal Board dated June 10, 1983, raises several questions regarding the procedures for payment of temporary total disability claims under the Workmen's Compensation Act, W.Va.Code, 23–1–1 *et seq.* After examining the questions presented, we conclude that the procedures followed by the Workers' Compensation Commissioner in the claimant's case did not comport with the requirements of the Act and the decisions of this Court. We, therefore, reverse the decision of the Workers' Compensation Appeal Board.

On March 4, 1981, the claimant sustained an injury to his right knee in the course of and as a result of his employment with the Kanawha Coal Company. He filed a claim for workers' compensation benefits. The Commissioner, by order dated April 10, 1981, held that the claim was compensable and granted the claimant temporary total disability benefits. Four weeks benefits were awarded based upon the treating physician's estimate on Form WC–219 that temporary total disability would last for four weeks.[1] The employer did not protest this order.

---

1. The letter communicating the order, which apparently followed a standard form used by the Commissioner in temporary total disability cases, provided:

    "DEAR CLAIMANT:
    "THE COMMISSIONER HAS ENTERED THE FOLLOWING ORDER:
    "YOUR CLAIM IS APPROVED (RULED COMPENSABLE). YOU ARE AWARDED TEMPORARY TOTAL DISABILITY BENEFITS FROM 03/05/81 TO, BUT NOT INCLUDING 04/03/81. THIS AWARD MAY BE MODIFIED BY FURTHER ORDER OF THE COMMISSIONER.
    "IF YOUR CLAIM IS ULTIMATELY DISAPPROVED, ALL WORKMEN'S COMPENSATION BENEFITS ARE OVERPAYMENTS WHICH YOU MUST REPAY.
    "IN ORDER FOR YOU TO CHANGE DOCTORS, YOU MUST HAVE ADVANCE PERMISSION IN WRITING FROM US.
    "ADDITIONAL BENEFITS MAY BE PAID IN YOUR CLAIM FOR PERIODS OF TEMPORARY TOTAL DISABILITY AS CERTIFIED BY YOUR DOCTOR. IT IS *YOUR* RESPONSIBILITY TO HAVE YOUR DOCTOR COMPLETE AND RETURN TO THE FUND AN UP-DATED ATTENDING PHYSICIAN'S REPORT (WC–219) CERTIFYING THE ANTICIPATED PERIOD THAT YOU WILL CONTINUE TO BE TEMPORARILY TOTALLY DISABLED BEYOND THE PERIOD SHOWN ABOVE.
    "THIS IS OFFICIAL NOTICE THAT IF YOU HAVE NOT PROVIDED US WITH AN UPDATED ATTENDING PHYSICIAN'S REPORT (WC–219), PRIOR TO YOUR LAST PAY DATE, AS SHOWN ABOVE, YOUR BENEFITS WILL BE SUSPENDED. THEN YOU HAVE A 60 DAY SUSPENSION PERIOD TO SUBMIT ADDITIONAL MEDICAL EVIDENCE. WITHOUT FURTHER MEDICAL EVIDENCE, YOUR TEMPORARY TOTAL DISABILITY BENEFITS WILL BE/WERE SUSPENDED ON 04/10/81 AND YOUR CLAIM WILL BE CLOSED ON 06/12/81.
    "IF YOUR CLAIM IS CLOSED, YOU MUST SUBMIT A PETITION TO REOPEN AND A DETAILED MEDICAL REPORT WHICH IS A LETTER FROM YOUR DOCTOR STATING HIS SPECIFIC FINDINGS. NOTE: A FORM WC–219 *WILL NOT* REOPEN A CLAIM.
    "IF YOU OR YOUR EMPLOYER OBJECT TO THIS FINDING, A WRITTEN PROTEST MUST BE FILED WITHIN THIRTY DAYS FROM THE DATE ON THIS LETTER.

Subsequently by three separate orders the Commissioner extended the award of temporary total disability benefits for definite periods based upon the treating physician's further estimates of the period of temporary total disability. The employer protested further payment of temporary total disability benefits on May 20, 1981, when the Commissioner issued the second temporary total disability order. The employer also protested the two subsequent temporary total disability orders issued by the Commissioner extending benefits through June 1, 1981.

A hearing on the protests was scheduled for August 3, 1981. The claimant was directed by a letter from the Commissioner to appear so that the employer could cross-examine him. The claimant failed to appear, and the Commissioner subsequently sent him a "fifteen-day" letter, which indicated that he had fifteen days to give good cause for his nonappearance.

Apparently the claimant gave good cause as the Commissioner set another hearing on November 23, 1981. The claimant again failed to appear, and another "fifteen-day" letter was sent. The claimant failed to give good cause, and the Commissioner on February 2, 1982, set aside the orders of May 7, May 20, and June 3, 1981. The Commissioner also ruled that the payments made under those orders be treated as overpayments subject to collection. The claimant appealed to the Workers' Compensation Appeal Board. The Appeal Board, by its decision of June 10, 1983, affirmed the Commissioner's ruling.

On appeal the claimant argues that under *Mitchell v. State Workmen's Compensation Commissioner*, 163 W.Va. 107, 256 S.E.2d 1 (1979), the repayment provisions of W.Va.Code, 23–4–1c, apply only where the employer has timely protested the initial determination of temporary total disability and not where the employer has subsequently protested the continuation of temporary total disability payments. In effect, he claims that because the employer failed to protest the initial temporary total disability order of April 10, 1981, the repayment provisions do not apply.

## I.

To properly focus the issues in this case, a brief review of the background and holdings in *Mitchell* is necessary. In Syllabus Point 2 of *Mitchell*, we recognized that the commissioner has broad statutory powers in making, refusing, or modifying temporary total disability awards and that such actions could be "taken without the necessity of advance evidentiary hearings."[2] A basic theme of *Mitchell* was an analysis of the temporary total disability provisions of the Workmen's Compensation Act to provide the Commissioner with guidelines that would enable the Commissioner to promptly and efficiently handle temporary total disability claims. *See also Honaker v. State Workmen's Compensation Commissioner*, 171 W.Va. 355, 298 S.E.2d 893 (1982).

Prior to *Mitchell*, the handling of temporary total disability claims was a veritable Serbonian Bog of adversarial proceedings which resulted in temporary total disability claims being litigated over periods of months or years. The most apparent beneficiaries were the lawyers whose clients could withstand the fee-rigors of the system. Historically, temporary total disability benefits were the initial benefits an injured worker received to compensate for wages lost because of his inability to work. Prior to the 1974 amendments to W.Va. Code, 23–4–1c, payments of temporary total disability benefits were stopped when an employer protested their continued pay-

VERY TRULY YOURS."
(Emphasis in original)

**2.** Syllabus Point 2 of *Mitchell, supra,* states:
"Under W.Va.Code, 23–5–1, the West Virginia Workmen's Compensation Commissioner has broad powers in making, refusing or modifying awards. These actions are taken without the necessity of advance evidentiary hearings, but are based upon credible evidence furnished the Commissioner through his reporting forms, information supplied by the parties and independent medical evaluations ordered by the Commissioner under W.Va.Code, 23–4–8."

ment.[3] It was not necessary for the employer to furnish any reason for protesting continuation of the temporary total disability benefits. Once the protest was made by an employer, the Commissioner would order an adversarial hearing. It was not until the conclusion of this adversarial process, which often consumed a period of months or years, that the Commissioner would then decide the claimant's right to resumption of temporary total disability benefits. The ultimate consequence of this procedure was that an employer's protest would suspend the payment of a claimant's temporary total disability benefits, which would work substantial economic hardship on the injured claimant because the adversarial hearings took so long to resolve the issue.

The legislature, in an attempt to alleviate this hardship on claimants who were seeking temporary total disability benefits, amended W.Va.Code, 23–4–1c, in 1974. The amendment provided that if an employer filed a protest to a temporary total disability award, the Commissioner should continue to pay the disability benefits during the course of the protest. The amendment also provided that if the Commissioner ultimately decided the claimant was not entitled to the benefits, the Commissioner

should enter an order reimbursing the employer for the overpayment. The Commissioner would then seek to collect the overpayment from the claimant.[4]

Despite the obvious good intention on the part of the legislature by the amendment of W.Va.Code, 23–4–1c, the underlying adversarial climate fostered continued inequities. Although an employer's protest did not stop payment of temporary total disability benefits, the adversarial nature of the proceeding, with its concomitant hearings and continuances for the convenience of the lawyers or their medical experts, still resulted in extreme delay in resolving the right to temporary total disability. The problem was further exacerbated by the Commissioner's practice, after the claims were finally submitted, of deciding the temporary total disability issue and cutting off temporary total disability benefits retroactively to some date prior to the date of the entry of the order. This would mean that the claimant who had been receiving temporary total disability during the protest period would find that some of the benefits were subject to repayment. It was against this backdrop that we decided *Mitchell v. State Workmen's Compensation Commissioner, supra.*[5] The essential

---

3. W.Va.Code, 23–4–1c (1973), provided, in pertinent part:

"Upon the filing of timely objection to any finding or order of the commissioner, as provided in section one [§ 23–5–1], article five of this chapter, with respect to the payment or continued payment of temporary total disability benefits as provided herein, the commissioner shall immediately cease said payments until such objection has been finally determined as provided in article five [§ 23–5–1 et seq.] of this chapter. If the claim is later determined not to be compensable, the employer's account is not to be charged for temporary total disability payments made, and the claimant will not be required to refund to the commissioner temporary total disability payments he has received, unless fraud has been employed in securing such benefits."

4. The material portion of W.Va.Code, 23–4–1c (1979), which is essentially the same as the 1974 amendment, provides:

"In the event that an employer files a timely objection to any finding or order of the commissioner, as provided in section one [§ 23–5–1], article five of this chapter, with respect to the payment of continued payment of tempo-

rary total disability benefits ... the commissioner shall continue to pay to the claimant such benefits and expenses during the period of such disability unless it is subsequently found by the commissioner that the claimant was not entitled to receive the temporary total disability benefits and the expenses ... in which event the commissioner shall ... credit said employer's account with the amount of the overpayment.... If the final decision in any case determines that a claimant was not lawfully entitled to benefits paid to him pursuant to a prior decision, such amount of benefits so paid shall be deemed overpaid. The commissioner may recover such amount by civil action or ... shall withhold, in whole or in part, as determined by the commissioner, any future benefits payable to the individual and credit such amount against the overpayment until it is repaid in full."

5. *Mitchell* was decided in May, 1979. The legislature enacted W.Va.Code, 23–4–7a (1979), which became effective on July 1, 1979. This statute recognizes the underlying problems that we addressed in *Mitchell* by this statement from subsection (a):

points of *Mitchell* can be summarized as follows:

FIRST, it is the Commissioner who is authorized to make, refuse or modify awards for temporary total disability, and no advance evidentiary hearings are required.

SECOND, the Commissioner makes such determinations based on credible evidence furnished through · reporting forms, information supplied by the parties and independent medical evaluations ordered by the Commissioner under W.Va.Code, 23-4-8.

THIRD, if the Commissioner after granting temporary total disability is made aware through the Commissioner's own reporting forms or information supplied on independent medical examination or from information supplied by the employer on an application under W.Va.Code, 23-5-1c, that temporary total disability benefits are no longer warranted, temporary total disability benefits may be terminated. However, where such information does not originate from the claimant or his physician, before the benefit may be terminated, reasonable notice must be given to the claimant of the proposed termination so that he may supply relevant information to show that the temporary total disability benefits are warranted.

FOURTH, where the Commissioner refuses to terminate temporary total disability benefits at the request of the employer upon his application under W.Va.Code, 23-5-1c, the employer upon a timely objection to this order, may proceed to evidentiary hearings.

"The legislature hereby finds and declares that injured claimants should receive the type of treatment needed as promptly as possible; that overpayments of temporary total disability benefits with the resultant hardship created by the requirement of repayment should be minimized; and that to achieve these two objectives, it is essential that the commissioner establish and operate a systematic program for the monitoring of injury claims where the disability continues longer than might ordinarily be expected."
The statute goes on to provide mandatory monitoring procedures.

FIFTH, where the Commissioner originally denies temporary total disability benefits or terminates the benefits at a later date, the claimant is entitled, upon timely protest to the order, to proceed to an evidentiary hearing on the issue.[6]

We still adhere to these principles and the further rule set out in *Mitchell* which requires the employer to protest the initial award of temporary total disability within thirty days if he desires to contest the jurisdictional basis for such an award, i.e., that the claim does not meet the various statutory prerequisites for an award of temporary total disability. In *Mitchell*, we indicated that the most common type of jurisdictional protest is "where the employer believes that the claimant was not injured in the course of and resulting from his employment." 163 W.Va. at 123, 256 S.E.2d at 12. We also outlined in note 11 of *Mitchell* some other jurisdictional prerequisites.[7] Thus, one of the central points in *Mitchell* was that where an employer desires to protest the jurisdictional basis of the award, he must do so within thirty days after the initial order awarding temporary total disability benefits. If this is done, the employer is entitled to an evidentiary hearing on the jurisdictional issue under W.Va. Code, 23-5-1.

During the course of the evidentiary hearings, the claimant continues to receive temporary total disability payments if he qualifies medically for them. However, when the hearings are completed, if the Commissioner finds that the claim did not jurisdictionally qualify, the claimant can be required to repay the benefits already received under W.Va.Code, 23-4-1c. This re-

6. The first three points summarized are essentially taken from Syllabus Points 1, 2 and 3 of *Mitchell*. Points 4 and 5 are discussed in the text of *Mitchell*.

7. Note 11 of *Mitchell* states:
"Some other jurisdictional prerequisites are the timeliness of the filing under W.Va.Code, 23-4-15, or reapplication under W.Va.Code, 23-4-16, or whether the injury was 'self-inflicted' or caused by 'willful misconduct, willful disobedience to such rules and regulations ...' under W.Va.Code, 23-4-2." 163 W.Va. at 123, 256 S.E.2d at 12.

sult obtains because the claimant has been found not to have lawfully qualified for the temporary total disability benefits initially since his claim did not jurisdictionally qualify as we summarized in Syllabus Point 4 of *Mitchell:*

"The overpayment provisions of W.Va. Code, 23–4–1c, apply only where the Commissioner determines in a W.Va. Code, 23–5–1, proceeding, that the claimant was not lawfully entitled to the temporary total disability benefits originally by virtue of the fact that the claim did not jurisdictionally qualify."

■ On the other hand, as we explained in Syllabus Point 3 of *Mitchell,*[8] where the employer does not contest the jurisdictional basis of the claim but only wishes to challenge the continuation of temporary total disability benefits, such challenge is by way of a petition to modify under W.Va.Code, 23–5–1c.[9] Under this section, there is no right initially to an evidentiary hearing, but the Commissioner decides, based upon the information supplied by the parties and that contained in the file or through an independent medical examination, whether the temporary total disability benefits should be terminated. If the Commissioner refuses to terminate, the employer may protest this order and obtain an evidentiary hearing.[10]

The employer argues that the Commissioner, by entering temporary total disabili-

ty orders that are limited to specified periods of time, has created a series of temporary total disability awards. Consequently, if a timely protest is made to any one of the orders, there is a right to an evidentiary hearing over the issue of whether temporary total disability payments should be continued. This position is contrary to the principles stated in *Mitchell* and serves only to engender all the problems that gave rise to the *Mitchell* case.

■ Neither the Workers' Compensation statutes nor *Mitchell* authorizes an employer, who has not originally protested the initial award of temporary total disability benefits, to protest subsequent awards of temporary total disability benefits and secure an evidentiary hearing over the continuation of temporary total disability benefits. Such employer's remedy is to file a petition for modification under W.Va.Code, 23–5–1c.

The facts of this case eloquently demonstrate the rationality of *Mitchell.* After the employer's protest on May 20, 1981, the matter was set for a hearing on the employer's protest on August 3, 1981. The claimant was advised by the Commissioner to be present at the hearing so that the employer could cross-examine him. It appears from correspondence in the file that the claimant's wife discarded this letter without informing the claimant who failed to appear at the August 3 hearing. Because of the claimant's failure to appear,

**8.** The pertinent portion of Syllabus Point 3 of *Mitchell* is:

"W.Va.Code, 23–5–1c, permits an employer, upon an application containing credible evidence, to request the Commissioner to terminate temporary total disability benefits. Under this section, evidentiary hearings are not required to be held by the Commissioner until an order terminating the benefits is entered and timely objection to the order has been made."

**9.** W.Va.Code, 23–5–1c, provides:

"In any case wherein an employer makes application in writing for a modification of any award previously made to an employee of said employer, and such application discloses cause for a further adjustment thereof, the commissioner shall, after due notice to the employee, make such modifications or changes with respect to former findings or

orders in such form as may be justified, and any party dissatisfied with any such modification or change so made by the commissioner, shall upon proper and timely objection, be entitled to a hearing as provided in section one [§ 23–5–1] of this article."

**10.** Where the Commissioner decides to terminate the temporary total disability benefits on an employer's petition for modification, as we explained in Syllabus Point 5 of *Mitchell,* the date of termination is the date of the Commissioner's termination order: "In a proceeding under W.Va.Code, 23–5–1c, to terminate temporary total disability benefits, the proper date for termination of the benefits is the date of the Commissioner's termination order." The reason that termination is as of this date is that the claim has not been found to be disqualified jurisdictionally and, therefore, the repayment provisions of W.Va.Code, 23–5–1c, are not applicable.

the employer requested that another hearing be scheduled and that the claimant attend the hearing which was set for November 23, 1981.

In the meantime on the administrative level, the claimant's claim was being processed according to *Mitchell,* and on June 1, 1981, his physician indicated he had reached the maximum degree of improvement. Consequently, the claim for temporary total disability benefits was suspended by the Commissioner's order of June 3, 1981. This was eighty-one days before the first protest hearing. The order indicated that unless the claimant furnished additional medical evidence by August 5, 1981, his claim for temporary total disability benefits would be closed on that date. The claimant did not furnish an additional medical report to show that he was still entitled to temporary total disability benefits. By an order dated August 5, 1981, the claimant was advised by the Commissioner that because no additional medical evidence had been received the claim was closed as of that date. The claimant did not protest the closing.

However, on the adversarial level, the wheels continued to spin. After the first hearing on August 3, 1981, another hearing was set for November 23, 1981. At this point, the temporary total disability payments had been ended for a period of 171 days, yet the adversarial hearing was to determine when the claim should be closed. It must be emphasized that at no time from the inception of the claim through the November 23, 1981, hearing did the employer offer to the Commissioner any evidence that would warrant the conclusion that the claim should have been closed prior to June 3, 1981, the actual date of closure. Thus, the adversarial hearing produced nothing except an illustration of the delay it engendered.

## II.

The second issue relates to the authority of the Commissioner to enter the February 2, 1982, order which declared that all temporary total disability benefits paid the claimant were overpayments which the Commissioner was entitled to recover.

■■■ We find that the Commissioner was without authority to enter the order in the form made for several reasons. First, the employer did not protest the jurisdictional basis of the initial award of temporary total disability benefits. As previously explained, this is a prerequisite under Syllabus Point 4 of *Mitchell* in order for the claimant to be liable for overpayment of temporary total disability benefits.

■■■ The employer's protest was only to the continuation of temporary total disability benefits. Under *Mitchell,* this should have been done by way of a petition for modification under W.Va.Code, 23–5–1c, which should have presented some factual basis for the modification of the temporary total disability award. We do not view a letter protest to continuation of temporary total disability benefits, which contains no facts to warrant cessation of the benefits, to meet the requirements of W.Va.Code, 23–5–1c.

■■■ Furthermore, as discussed in *Mitchell,* the filing of a petition for modification does not trigger the right to have adversarial evidentiary hearings over the continuation of temporary total disability benefits. Once the employer files a petition for modification, *Mitchell* requires the Commissioner to decide whether temporary total disability benefits should be continued based on the information supplied and that contained in the file. It is only after the Commissioner, by order, terminates the claimant's temporary total disability benefits or refuses the employer's modification request that the respective parties may object and request an evidentiary hearing on the correctness of the Commissioner's ruling.

Finally, we believe the Commissioner's order was in error when it required the claimant to pay back all of the benefits he had received because he did not respond to the fifteen-day letter.[11] We are aware of

11. The fifteen-day letter used by the Commis-   sioner stated:

no statutory authority for the Commissioner's issuance of such a letter which, in effect, deprived the claimant of benefits previously awarded. The only provision that we can find that appears to bear on the "fifteen-day letter" is Rule 17.04 of the Rules and Regulations of the West Virginia Workmen's Compensation Fund (1982), relating to nonappearance: "No case shall be decided upon the nonappearance of a claimant or an employer at a scheduled hearing until fifteen (15) days after the issuance of a letter to the nonappearing party granting leave to show cause for such nonappearance." [12] Quite obviously this regulation provides a means of having a case submitted where there has been nonappearance of a party at a hearing. This regulation cannot be construed to authorize the Commissioner to require repayment of temporary total disability benefits which previously have been properly awarded.

We recognized in *Colvin v. State Workmen's Compensation Commissioner,* 154 W.Va. 280, 175 S.E.2d 186 (1970), that a claimant who failed to pursue his protest to an order denying his claim for an award for additional permanent partial disability by requesting repeated continuances without good cause could be denied further continuances and that the claim could be submitted. If there was not sufficient evidence to support additional disability, then the protest claim could be dismissed.[13]

However, *Colvin, supra,* has no applicability to the present case because the claimant is required to support his temporary total disability claim by furnishing the Commissioner supporting medical reports, otherwise his benefits are suspended. There is nothing in *Colvin* that would authorize the Commissioner to declare a forfeiture of this claimant's temporary total disability benefits which have been previously awarded based upon adequate medical evidence.

We, therefore, conclude that where a claimant has properly furnished medical evidence and has been awarded a series of temporary total disability benefits, the claimant may not be deprived of these benefits by the Commissioner because he failed to respond to the fifteen-day notice letters issued pursuant to Rule 17.04 of the Rules and Regulations of the West Virginia Workmen's Compensation Fund (1982).

For the reasons stated, the order of the Workers' Compensation Appeal Board is reversed, and this case is remanded to the Workers' Compensation Commissioner with directions that the order of February 2, 1982, be vacated.

Reversed and Remanded with Directions.

NEELY, Justice, dissenting:

The majority's opinion purports to clarify our previous decision in *Mitchell v. State Workmen's Compensation Commission-*

---

"You have fifteen (15) days from the date of this letter to give good cause in writing, why you did not appear at the hearing held on November 23, 1981 in Madison, WV.
 "If we do not hear from you before the end of this period, or if good cause is not given, " ___ the ruling of _____ will be set aside and your claim dismissed. " ___ the ruling of _____ will be affirmed. " ___ the information which we now have will be used to make a decision. " X  the ruling of 5–7–81, 5–20–81 and 6–3–81 will be set aside and your claim closed.
      Very truly yours."

**12.** An identical provision is found in Rule 17.04 of the Workmen's Compensation Fund Rules and Regulations (1976), which was in effect during the period of this claim.

**13.** Syllabus Point 2 of *Colvin v. State Workmen's Compensation Commissioner, supra,* states:

"The State Workmen's Compensation Commissioner is clothed with the power to exercise a reasonable discretion in determining whether good cause has been shown for granting a continuance of a hearing or a succession of continuances of hearings to a claimant who has protested a previous ruling of the commissioner. If, after having granted a succession of continuances to a claimant, the commissioner, in a reasonable exercise of his discretion, determines that the claimant has not shown good cause for an additional continuance and that the claimant, therefore, has not prosecuted his claim with reasonable diligence, the commissioner may refuse to grant to the claimant an additional continuance and may proceed to decide the case on the evidence before him or in the alternative, if the claimant has failed to present any proper evidence in support of his protest, the commissioner may disregard the protest and order that the claim be closed and terminated."

*er*, 163 W.Va. 107, 256 S.E.2d 1 (1979). If this is a clarification, "Obscurity is what I have need of now." [1] The rule of law that we establish today is blatantly inequitable. If a claimant's temporary disability benefits are cut off improperly, that claimant has a right to receive back payments once his claim is vindicated. If, on the other hand, an employer is forced to pay temporary benefits that are ultimately found to be improper, that employer has no right to collect overpayments he has already made. Orwell was right. Although all animals are equal, it would appear that some are more equal than others.

The majority opinion goes to some length to explain the origins of our present statutory scheme. At one time, if an employer protested temporary benefits those benefits were not awarded until the dispute was settled. Because this approach placed a real burden on disabled workers the legislature enacted a scheme under which the employer would have to pay benefits during the time of a dispute with the understanding that he would receive back any money that was ultimately found to be an overpayment. That legislative enactment was both humane and reasonable. Employers as a group are in a far better position to bear the temporary burden of making payments while a dispute concerning the cause or extent of injury is adjudicated. It is a perversion of that scheme, however, to deprive employers of overpayments permanently simply because they are in a better position to bear temporary strains on cash flow.

The majority opinion contorts the statutory language to reach a result that defies common sense. They claim that an employer who does not protest an initial award of temporary total disability is estopped from lodging an effective protest of subsequent extensions of that award. Although this is done in the name of administrative efficiency, its real effect will be to require employers to file an initial protest in all cases in order to reserve their rights when improper extensions are granted. If a claimant who is injured on his job re-ceives a temporary total disability award for a period of thirty days, his employer may have no quarrel with that award. However, if the claimant continually seeks and obtains extensions of payment under that award, serious questions may arise in the mind of the employer concerning whether the worker actually remains injured and whether the source of that continued injury is work-related.

The majority would respond that such an employer can only proceed by means of a petition to modify under *W.Va.Code 23-5-1(c)* [1939]. Therefore, the employer is not entitled to any evidentiary hearing and if he should receive a favorable ruling from the Commissioner, the claimant would still have an opportunity to request an evidentiary hearing before that ruling would take effect. The majority goes still further in saying that the Commissioner was without authority to require the claimant to pay back benefits he had received after failing to comply with the letter requiring him to appear at a hearing.

The absurdity of this scheme is hard to overstate. An employer who correctly believes that a claimant no longer has a valid claim has no right to get a hearing on this matter despite the fact that he never agreed that payments should be for the extended period in the first place. If the Commissioner rules in the employer's favor without benefit of a hearing, the employer has no right to terminate payments that were adjudged improper until the claimant is heard on the matter. If the claimant chooses not to attend scheduled hearings, the employer remains without remedy. In other words, claimants have a positive incentive to delay the process because their dilatory actions will put money in their pockets.

Apparently, the majority hinges all of these bizarre results on the distinction drawn in *Mitchell, supra* between employer's objections that are "jurisdictional" and those which are "medical." If those talismanic legal terms are meant to be explanatory, I confess to continued confusion. The majority states that most initial juris-

---

1. Robert Bolt, *A Man for all Seasons* Act 2, Scene 1, p. 53 (1960).

dictional claims question whether the injury is work-related. It should be noted that some initial protests also go to the very existence of an injury. The Commissioner does not have jurisdiction to give awards in cases where the injury was not work-related; but she also, strangely enough, lacks jurisdiction where there was no injury. Thus, the distinction drawn in *Mitchell, supra,* 163 W.Va. at 124–126, 256 S.E.2d at 12–13 between "jurisdictional" and "medical" issues is specious. It is quite possible that an employer who agrees with the temporary award of thirty days total disability believes that the Commissioner is not properly empowered to grant an additional sixty days of total disability, either because there is no longer any injury or because the injury currently complained of is not work-related.

Furthermore, the majority opinion ignores the plain meaning of the statutory language. *W.Va.Code* 23–4–1(c) [1973] states in relevant part:

> In the event that an employer files a timely objection to any finding or order of the Commissioner, as provided in section 1 [§ 23–5–1], article five of this chapter, with respect to the payment *or continued payment* of temporary total disability benefits, …, the Commissioner shall continue to pay to the claimant such benefits and expenses during the period of such disability unless it is subsequently found by the Commissioner that the claimant was not entitled to receive the temporary total disability benefits … in which event the Commissioner shall, for the Employer as a subscriber to the Fund credit same Employer's account with the amount of the overpayment; and, where the employer has elected to carry his own risk, the Commissioner shall refund to such Employer the amount of the overpayment …. [emphasis added].

The legislature has recognized that employers who have no objection to an original award may have a just complaint about the continuation of payments beyond the original temporary disability award. Although the majority opinion creates the illusion that there is a great deal of complexity in the statutory scheme, there is in fact a very simple principle at the heart of it. If there is a dispute regarding the validity of a claim, the claimant should receive benefits until that dispute is resolved. If it is ultimately determined that his award was excessive, the employer should recover the amount of the overpayment. Whether the overpayment is the result of an initially excessive award or of improper extensions of temporary disability benefits is not, and should not be, of any legal significance. The legislature has spoken clearly and intelligently. This court should not interfere with their judgment.

It is not entirely beside the point to remark that this scheme hardly provides employers a cornucopia since most workers have a hard time finding the money when pay-back time comes. This is occasionally known in the more arcane legal literature as the "blood and stone" principle.

I agree with the majority that every effort should be made to streamline the workers' compensation system's procedures so that claimants can receive the funds they need. I do not believe we advance that goal, however, by requiring employers to make spurious claims in order to reserve their rights to make proper ones later. Claimants who use delays in the system to collect overpayments that are not refundable to employers place a strain on the system that is not contemplated in the statutory scheme.

It makes economic and human sense to require employers to make workers' compensation payments while the propriety of the claim is being established. It does not make sense and is not fair to require them to forego money that was paid out in excess of the proper claim because the system required them to make those payments. When a government imposes unreasonable burdens on commercial entities it runs the risk of driving away employment opportunities for its citizens. I must respectfully dissent.