330 S.E.2d 329

**Jay A. ADKINS**

v.

**WORKERS' COMPENSATION COMMISSIONER, and U.S. Steel Mining Co., Inc.**

**No. 16364.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1985.

Decided May 10, 1985.

Timothy G. Leach, U.M.W.A., Charleston, for appellant.

Kevin A. Nelson, Love, Wise & Woodroe, Charleston, for appellee.

Mary Lou Newberger, WCC, Charleston, for WCC.

MILLER, Justice:

The principal issue on this appeal is the authority of the Workers' Compensation Commissioner to dismiss an employee's claim for temporary total disability benefits and require repayment of all benefits received. The employee had failed to appear at a hearing after being notified by the Commissioner to appear and did not respond to the Commissioner's subsequent fifteen-day notice letter which requested the employee to show good cause for his nonappearance.

The Workers' Compensation Appeal Board sustained the Commissioner's dismissal order and its provision requiring the employee to pay back all temporary total disability benefits previously received. It distinguished our recent case of *Butcher v. State Workers' Compensation Commissioner,* 173 W.Va. 306, 315 S.E.2d 563 (1983), on the ground that in this case the employer had made a timely protest to the initial compensability of the employee's claim, whereas in *Butcher* the employer had not done so and was foreclosed from challenging the initial compensability ruling. Our primary holding on this issue was contained in Syllabus Point 4 of *Butcher:*

> "Where a claimant has properly furnished medical evidence and has been awarded a series of temporary total disability benefits, the claimant may not be deprived of these benefits by the Commissioner because he failed to respond to the fifteen-day notice letters issued pursuant to Rule 17.04 of the Rules and Regulations of the West Virginia Workmen's Compensation Fund (1982)."

A brief review of the salient facts is in order. After the employee initially filed his claim for a knee injury in March of 1981, the employer within thirty days protested the claim. The first protest hearing was set on September 24, 1981, in Charleston. The employer appeared by counsel and moved that the hearing be continued and that the matter be set on the next Montgomery docket for medical testimony. The employee did not appear.

Subsequently, the Commissioner set the claim on March 22, 1982, in Montgomery. Prior to this date, the employer's attorney by letter moved the Commissioner to issue a subpoena for Dr. Pitsenberger, the employee's physician, to attend the March hearing. This was done and the doctor appeared and was examined by the employer's attorney. The doctor in his testimony related how the employee had been injured at work and described the knee injury and his prognosis for recovery. At the conclusion of this hearing, the employer's attor-

ney moved that the claim be continued back to Charleston for further medical testimony.

Thereafter another hearing was scheduled by the Commissioner for August 16, 1982, in Charleston. Prior to this date, the employer obtained new counsel who wrote the Commissioner asking that a notice be sent to the employee advising him to appear at the August 16 hearing for cross-examination. Such a notice was sent, however, the employee did not appear at the hearing. On September 7, 1982, the Commissioner sent a letter to the employee in which he was informed that he had fifteen days from the date of the letter to show good cause in writing why he did not appear at the August hearing. The letter also indicated that if he did not respond or show good cause, then his claim would be dismissed.

Subsequently, on October 29, 1982, in the absence of any response from the employee, the Commissioner dismissed the case and declared that all temporary total disability benefits paid to the employee must be repaid. This dismissal by the Commissioner was affirmed by the Appeal Board on the theory that *Butcher* was not controlling.

■ In *Butcher*, we dealt at some length with the dismissal of a claimant's case by virtue of his failure to respond to a fifteen-day notice letter, which was sent to determine why he had failed to appear at a given hearing. We stated that we could find no statutory authority for the practice and observed:

"The only provision that we can find that appears to bear on the 'fifteen-day letter' is Rule 17.04 of the Rules and Regulations of the West Virginia Workmen's Compensation Fund (1982), relating to nonappearance: 'No case shall be decided upon the nonappearance of a claimant or an employer at a scheduled hearing until fifteen (15) days after the issuance of a letter to the nonappearing party granting leave to show cause for such

nonappearance.' Quite obviously this regulation provides a means of having a case submitted where there has been nonappearance of a party at a hearing. This regulation cannot be construed to authorize the Commissioner to require repayment of temporary total disability benefits which previously have been properly awarded." 173 W.Va. at 314, 315 S.E.2d at 571. (Footnote omitted).

The distinction made by the Appeal Board and urged by the employer here is that *Butcher* dealt with an employer who had failed to timely protest the initial compensability ruling. As a consequence, the employer could not subsequently challenge the compensability of the claim, i.e., that it arose in the course of and resulting from covered employment. *See Mitchell v. State Workmen's Compensation Commissioner*, 163 W.Va. 107, 256 S.E.2d 1 (1979). It is urged that since the employer made a timely protest to the initial compensability of the claim, he had a right to cross-examine the employee. Consequently, the employee's failure to appear and subsequent refusal to respond to a fifteen-day notice letter should warrant dismissal of the claim.

In *Butcher*, we discussed and distinguished *Colvin v. State Workmen's Compensation Commissioner*, 154 W.Va. 280, 175 S.E.2d 186 (1970), in which we held that a claimant who has protested a ruling of the Commissioner and then seeks repeated continuances without good cause may be denied a further continuance and the claim may be submitted on the existing record.[1]

The issue in the present case is not that the employer should be denied a right to cross-examine the claimant, but rather under what circumstances the employee's claim can be dismissed when he fails to appear for cross-examination. The Commissioner has filed a brief in this case that summarizes the nature of workers' compensation administrative procedures:

"Workers' Compensation hearings, unlike other administrative hearings, are

1. In *Butcher*, 173 W.Va. at 314, 315 S.E.2d at 571, we said with regard to *Colvin*: "There is nothing in *Colvin* that would authorize the Commissioner to declare a forfeiture of this claim-ant's temporary total disability benefits which have been previously awarded based upon adequate medical evidence."

conducted piecemeal. That is, there are not one or two full-blown hearings wherein each side is prepared to present its entire case on the scheduled hearing date. Instead, the hearings are more informal, with one party presenting a witness at one hearing, and the other side continuing the claim to present additional and/or rebuttal evidence. Many claims remain in the administrative litigation process, at the request of the parties, over a period of several years with many hearings scheduled and continued. As a result, it is not unusual for the parties and/or a witness to fail to attend a hearing at some point in the litigation." (Commissioner's Brief, pp. 2–3).[2]

■ The lack of administrative regulations controlling the evidentiary development of a case at protest hearings is reflected by what occurred in this case. Here, the employer protested the initial temporary total disability award, but the first hearing was virtually meaningless since the employer simply appeared and moved that the hearing be reset in Montgomery to take the employee's doctor's testimony. This was done at the second hearing in Montgomery which was concluded by the employer's request to set a third hearing in Charleston for further medical testimony.

It was not until some twenty days prior to the third hearing in August, 1982, that the employer requested the Commissioner to notify the employee to appear at the hearing. A letter was sent some twelve days prior to the hearing which merely advised the employee that the employer "desires to cross-examine you in reference to your claim ... [and] it will be necessary for you to be present at the hearing." The letter also gave the date, location and time of the hearing, but did not advise the employee that his failure to appear would result in the dismissal of his claim and liability for all temporary total benefits previously received.

Moreover, by the time the first protest hearing was set on September 24, 1981, the employee had already been notified over a month earlier that his claim for temporary total disability benefits was closed because he had failed to supply any current medical evidence that he was still disabled and unable to work.[3] Thus, it might be expected that when notified by the Commissioner a year later that he should attend a hearing, the employee might have thought it a useless act.

We do not disagree that an employer who timely protests the original compensability of a workers' compensation claim, in order to show that it was not work related[4] or to explore the extent of the claimant's injuries, is entitled to cross-examine the claimant. We believe the Appeal Board erred in this case, however, in ruling that the informal letter requesting the employee to appear for cross-examination, which contained no explanation of the consequences of his nonappearance, could result in the dismissal of his claim and repayment liability.

2. Whether this procedure is appropriate may be open to question since it puts the control of the hearings in the hands of the parties through their attorneys instead of the administrative agency. Apparently, no attempt is made by the agency prior to the hearing to have the hearing examiner contact the parties and determine what will be done at the hearing. Furthermore, as evidenced by the file in this case, the claim is not kept with the same hearing examiner. A different hearing examiner appeared at each of the three hearings. Such a lack of continuity can obviously lead to a failure to develop any familiarity with the claim. If claims were assigned permanently to one hearing examiner, he could then be instructed to consult with the parties and direct the development of the contested issues. In setting one or two hearings to dispose of them, the entire hearing process might become more expedited.

3. This was contained in the Commissioner's order dated August 10, 1981. The Commissioner's policy of requiring the claimant to furnish a chain of medical reports in order to obtain temporary total disability is discussed in *Honaker v. State Worker's Compensation Commissioner*, 171 W.Va. 355, 298 S.E.2d 893 (1982).

4. On the employee's Workers' Compensation application form, WC–123, he noted in Section I the name of a witness to the accident. Section II was completed by his attending physician. In Section III, the employer answered "No" to the following two questions: "Do you disagree with any of the information provided in Section I?" and "Do you have any Reason to Question this Injury?"

■ The Commissioner is vested with subpoena power, a point acknowledged in the Commissioner's brief where there is set out a number of steps that have been taken to revise the claims procedure in light of *Butcher.* Of particular bearing on this case is the provision for obtaining the appearance of a party which the other party wishes to examine.[5] The Commissioner's procedure is to utilize a subpoena as authorized by W.Va.Code, 23–1–9.[6] We believe that this procedure is a correct approach under *Butcher.* An employer's right to cross-examine a claimant is preserved through the use of a subpoena.

We do, however, conclude that where an employer has timely protested the initial compensability of a workers' compensation claim, the claimant can be required to attend a hearing through a subpoena issued pursuant to W.Va.Code, 23–1–9, and his claim cannot be dismissed by way of a fifteen-day notice letter.

For the reasons stated, the final order of the Workers' Compensation Appeal Board is reversed.

Reversed.

5. The following is excerpted from pages 5 and 6 of the Commissioner's brief:

"C. THE CLAIMANT OR EMPLOYER PROTESTS AN ORDER OF THE COMMISSIONER.
THE NON–PROTESTING PARTY DOES NOT ATTEND THE HEARING(S), BUT THE PROTESTING PARTY WANTS TO EXAMINE THE NON–ATTENDING PARTY.

"If the non-attending party was not under subpoena to attend the hearing at which he failed to appear, another hearing must be scheduled and a subpoena issued to the party.

"Upon the party's failure to attend a hearing after a subpoena has been issued by the Commissioner pursuant to W.Va.Code, 23–1–9, the party is sent a notice that he has 15 days to show good cause for his non-attendance. Further this notice informs the party that if good cause is not shown, the Commissioner will seek to enforce the subpoena in the appropriate circuit court. . . .

"After the appropriate waiting period, the Commissioner enters one of the following three orders: If no response has been received from the party, or if she determines that the stated reason for non-compliance with the subpoena does not constitute good cause, she will issue an order so stating and informing the party that she will now seek to enforce the subpoena in the appropriate circuit court to compel the party's attendance. . . .

"If the Commissioner decides that the proffered reason for the party's non-compliance with the subpoena does not constitute good cause, or the party offers no explanation, but the party does not assure the Commissioner that he will comply with the subpoena and attend the next hearing, the Commissioner will issue the order attached as Exhibit I. She informs the parties of the foregoing, and further informs them that because of the representations of the party under subpoena she will not seek to enforce the subpoena.

"Finally, if the party shows good cause for his non-compliance with the subpoena, the Commissioner enters an order so finding and stating that the party remains under subpoena and will be informed of the next scheduled hearing date. . . .

"The above-outlined procedure is also used by the Commissioner to compel the attendance of nonparty witnesses such as physicians."

6. W.Va.Code, 23–1–9, provides:

"In case of failure or refusal of any person to comply with the order of the commissioner, or subpoena issued by him, his secretary, or one of his inspectors or examiners, or on the refusal of a witness to testify to any matter regarding which he may be lawfully interrogated, or refusal to permit an inspection as aforesaid, the circuit judge of the county in which the person resides, on application of the commissioner, or any inspector or examiner appointed by him, shall compel obedience by attachment proceedings as for contempt, as in the case of disobedience of the requirements of a subpoena issued from such court on a refusal to testify therein."