# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2018 Term**

_____

No. 17-0864

_____

**FILED**

**June 6, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**EDWARD REED,**
Petitioner

v.

**EXEL LOGISTICS, INC.,**
Respondent

_____

**Appeal from the Workers' Compensation Board of Review**
Claim No. 2014000133
Appeal No. 2051867

**REVERSED AND REMANDED**
_____

**Submitted: May 9, 2018**
**Filed: June 6, 2018**

M. Jane Glauser, Esq.
Schrader Byrd & Companion, PLLC
Wheeling, West Virginia
Counsel for the Petitioner

Lisa Warner Hunter, Esq.
Pullin, Fowler, Flanagan,
Brown & Poe, PLLC
Charleston, West Virginia
Counsel for the Respondent

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE WALKER dissents and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.       When a question on appeal from the Workers Compensation Board of Review raises a question of law, under *W.Va. Code* § 23-5-15 [2005] this Court reviews the Board's resolution of the question *de novo*.

2.       "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  Syllabus Point 1, *Smith v. State Workmen's Comp. Com'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

3.       "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."  Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

Justice Ketchum:

In this appeal from the Workers' Compensation Board of Review, an employer paid temporary total disability benefits to a claimant for almost two-and-a-half years while the claimant was undergoing medical and physical rehabilitation. Months later, the employer discovered it had paid the claimant benefits for an extra 156 days beyond the date the employer was statutorily required to pay. The employer then declared those 156 days an "overpayment" and sought to recover the benefits from the claimant.

The Board of Review concluded that, under our workers' compensation laws, the employer could reclaim those benefits. However, this Court finds the Board of Review has misread those laws. Under the relevant workers' compensation law, *W.Va. Code* § 23-4-1c(h) [2009], an employer is required to (1) give the claimant notice and clearly move to modify or terminate temporary total disability benefits on a specific date; (2) be initially unsuccessful in the modification or termination; and then (3) receive a successful ruling on the modification or termination in an adversarial proceeding. Only then may the employer recover the benefits overpaid between the date of the motion and date of the successful ruling. As set forth below, because the employer never sought to modify or terminate the benefits until 156 days after the statutory deadline, and wholly failed to follow the process set out in *W.Va. Code* § 23-4-1c(h), we reverse the Board of Review.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

The claimant in this workers' compensation case is Edward Reed, who worked as a shuttle driver for his employer, Exel Logistics, Inc. On June 27, 2013, the

1

claimant stepped on the frame of a truck and slipped. He heard a "snap" in his left foot as he fell. A doctor diagnosed the claimant with a left ankle fracture,[1] and he underwent several surgeries to repair and stabilize the injury. The record indicates that, despite the surgeries, the claimant continued to have instability in the ankle.

The claimant promptly submitted a claim for workers' compensation benefits, and his employer's workers' compensation insurer promptly found the claim compensable. More importantly, the claims examiner for the insurer promptly began paying the claimant temporary total disability benefits of $67.37 a day.

The claimant continued to visit doctors and physical therapists over the next two-and-a-half years. Then, on November 25, 2015, the claimant's doctor prepared a "Physician's Report of Work Ability" wherein he declared that the claimant had reached his maximum degree of medical improvement ("MMI"). The doctor also opined that the claimant was a candidate for vocational rehabilitation services focused on returning the claimant to work.

In response to the doctor's report of MMI, the claims examiner halted the claimant's temporary total disability benefits, effective November 24, 2015. Additionally, the claims examiner entered orders refusing to approve further physical therapy or vocational evaluations.

---

[1] In technical terms, the claimant suffered a "fracture of the lateral malleolus."

A physician examined the claimant for any permanent impairment caused by his work-related injury. Based upon that examination, the claims examiner granted a 4% permanent partial disability award to the claimant, equal to $7,553.44.

However, West Virginia law limits the payment of temporary total disability benefits to a claimant to a maximium period of "one hundred four weeks." *W.Va. Code* 23-4-6(c) [2005]. In an order dated June 22, 2016, relying upon this statute, the claims examiner for the first time decided that the payment of temporary total disability benefits to the claimant should have terminated two years after his injury, that is, by June 27, 2015. The insurer's claims examiner retroactively declared that the insurer had improperly paid the claimant benefits for 156 days beyond the 104-week statutory cap, until November 24, 2015.

The claims examiner calculated that the insurer had overpaid the claimant $10,509.72. Using this overpayment figure, the claims examiner refused to pay the claimant his permanent partial disability award and instead declared that the claimant had a remaining overpayment – to be credited against any future award – of $2,956.28.

The claimant protested the claims examiner's overpayment order to the Office of Judges. On March 6, 2017, the Office of Judges entered an order reversing the claims examiner and finding that the claims examiner had failed to timely seek to terminate the claimant's benefits in June 2015, or to otherwise comply with workers' compensation laws pertaining to the modification or overpayment of temporary total disability benefits. The Office of Judges therefore concluded that the claims examiner was legally prohibited from declaring an overpayment of the 156 days of benefits paid after that date. However,

3

in an order dated August 30, 2017, the Workers' Compensation Board of Review reversed the Office of Judges and reinstated the claims examiner's decisions regarding an overpayment.

The claimant, Mr. Reed, now appeals the Board of Review's overpayment decision.

## II.
## STANDARD OF REVIEW

This case comes to this Court from an order of the Board of Review which reversed the decision of the Office of Judges. Our review is, therefore, guided by *W.Va. Code* § 23-5-15(d) [2005], which provides in part:

> (d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is in clear violation of constitutional or statutory provisions, [or] is clearly the result of erroneous conclusions of law, . . .

Moreover, the Board of Review's decision involved the interpretation of workers' compensation statutes pertaining whether an "overpayment" of temporary total disability benefits has occurred. In Syllabus Point 1 of *Appalachian Power Company v. State Tax Department*, 195 W.Va. 573, 466 S.E.2d 424 (1995), this Court explained that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Hence, when a question on appeal from the Board of Review raises a question of law, under *W.Va. Code* § 23-4-15 we review the Board's

4

resolution of the question *de novo.  See*, *e.g.*, *Lovas v. Consolidation Coal Company*, 222 W.Va. 91, 95, 662 S.E.2d 645, 649 (2008) (Conclusions of law of the Workers' Compensation Board of Review "are subjected to *de novo* inspection."); *Dodson v. Workers' Compensation Division*, 210 W.Va. 636, 641, 558 S.E.2d 635, 640 (2001) (This Court applies a de novo standard of review to questions of law arising in the context of Workers' Compensation Appeal Board decisions.); *Rhodes v. Workers' Compensation Division*, 209 W.Va. 8, 12, 543 S.E.2d 289, 293 (2000) (This Court reviews *de novo* questions of law decided by the Workers' Compensation Appeal Board.); Syllabus Point 4, *Emmel v. State Compensation Director*, 150 W.Va. 277, 145 S.E.2d 29 (1965) ("An order of the workmens' compensation appeal board, approving an order of the state compensation commissioner, will be reversed by this Court on appeal, where the legal conclusions of the appeal board are erroneous.").

### III.
### ANALYSIS

The parties' arguments require this Court to examine several workers' compensation statutes.  Before we set forth those statutes, we roughly define the parties' arguments.  The employer argues that West Virginia's workers' compensation law is clear: a claimant is limited to a maximum of 104 weeks of temporary total disability benefits for a single injury.  There are no exceptions to this statutory maximum limit.  Hence, any benefits paid to the claimant in excess of this limit should automatically be considered an overpayment.  The employer therefore asserts that the claims examiner in this case was

5

statutorily entitled to declare an overpayment of temporary total disability benefits, and was entitled to recover that overpayment from future benefit awards to the claimant.

The claimant, however, argues that West Virginia's workers' compensation statutes expressly limit a claims examiner's ability to declare an overpayment of temporary total disability benefits. Under the law, a claimant who is totally but temporarily disabled by a work injury is presumptively entitled to temporary total disability benefits. The employer must pay the claimant these benefits. An overpayment exists only where the claims examiner (or other representative of the employer) tries to modify or terminate those benefits but, due to litigation, is required to continue paying until the employer's representative receives a favorable ruling in the adversarial process. The claimant asserts that only then may the claims examiner recover an "overpayment," and then only the amounts paid between the date of the attempted modification or termination and the ruling that the claimant was not entitled to the temporary total disability benefits.

The claimant argues that, in this case, the claims examiner never objected to or sought to modify or terminate the claimant's overall receipt of temporary total disability benefits. The claims examiner also did nothing to order the termination of the benefits at the end of 104 weeks. Instead, despite having a duty to monitor the claim, the claims examiner negligently authorized and paid an extra 156 days of benefits beyond the statutory maximum limit and then, months later, arbitrarily declared those benefits an overpayment. The claimant contends he is blameless for the claims examiner's actions, and says he relied upon the benefits, to his detriment, and continued physical rehabilitation in an attempt to return to the workforce. The claimant asserts that the claims examiner's declaration of an

6

overpayment clearly violated West Virginia's workers' compensation laws. We agree with the claimant.[2]

We begin with the relevant workers' compensation laws. When an employee is injured in the course of and as a result of his or her employment, and "the injury causes temporary total disability, the employee shall receive during the continuance of the disability a maximum weekly benefit" based upon a percentage of the employee's wages. *W.Va. Code* § 23-4-6(b) [2005]. However, the payment of those temporary total disability benefits "is limited as follows: . . . [the] aggregate award for a single injury for which an award of temporary total disability benefits is made . . . shall be for a period not exceeding one hundred four weeks. Notwithstanding any other provision of this subdivision to the contrary, no person may receive temporary total disability benefits under an award for a single injury for a period exceeding one hundred four weeks[.]" *W.Va. Code* § 23-4-6(c).

The workers' compensation laws require a claims examiner for an employer's insurer to terminate temporary total disability benefits when the claimant reaches his or her MMI. The law provides that a claims examiner "shall enter a notice suspending the payment of temporary total disability benefits . . . (2) When the authorized treating physician advises the . . . private carrier . . . that the claimant has reached his or her maximum degree of improvement[.]" *W.Va. Code* § 23-4-7a(e)(2) [2005].

---

[2] The claimant also argues that the 156 days of benefits should be construed as rehabilitation benefits. We decline to consider this argument.

7

In this case, it is undisputed that the claims examiner properly awarded temporary total disability benefits to the claimant beginning upon his injury in June 2013, and properly suspended those benefits in November 2015 when the claimant's physician concluded that the claimant had reached his MMI. The question we must resolve is whether, under the workers' compensation laws, the 156 days of benefits that the claims examiner paid to the claimant beyond the 104-week limit legally constitutes an "overpayment" under the law. As we discuss below, we find that it does not.

*West Virginia Code* § 23-4-1c(h) [2009] governs the overpayment of temporary total disability benefits. The statute establishes that an overpayment occurs when two things occur: "an employer files a timely objection" to an order "denying an application for modification with respect to temporary total disability benefits;" and an adversarial proceeding results in an order finding "that the claimant was not entitled to receive such temporary total disability benefits." *Id.* Stated another way, an overpayment exists only when an employer has "applied for modification of a temporary total disability award" and has later received, in an adversarial proceeding, a "final decision in that case [which] determines that the claimant was not entitled to the benefits[.]" *Id.* That statute provides, in pertinent part:

> (h) In the event that an employer files a timely objection to any order of the Insurance Commissioner, private carrier or self-insured, whichever is applicable, with respect to compensability, or any order denying an application for modification with respect to temporary total disability benefits, . . . the division shall continue to pay to the claimant such benefits . . . during the period of such disability. Where it is subsequently found by the Insurance Commissioner, private carrier or self-insured, whichever is applicable, that the

8

claimant was not entitled to receive such temporary total disability benefits . . . , or any part thereof, so paid, the Insurance Commissioner, private carrier or self-insured, whichever is applicable, shall credit said employer's account with the amount of the overpayment. When the employer has protested the compensability or applied for modification of a temporary total disability benefit award . . . and the final decision in that case determines that the claimant was not entitled to the benefits . . . , the amount of benefits or expenses is considered overpaid. For all awards made . . . the Insurance Commissioner, private carriers or self-insured employer may recover the amount of overpaid benefits or expenses by withholding, in whole or in part, future disability benefits payable to the individual in the same or other claims and credit the amount against the overpayment until it is repaid in full.

*Id.* *See also* 85 CSR § 1.12.1 [2009] (defining "overpayments" as "any monies received from, or paid on a claimant's behalf by, the responsible party to which it is subsequently determined by the responsible party that the injured worker was not entitled. Overpayment may include, but shall not be limited to, the payment of temporary total disability benefits[.]").

The employer contends, in effect, that the overpayment statute is a meaningless relic of a bygone era. The employer asserts that employers no longer object to decisions made by private insurance carriers, or apply for modifications of temporary total disability benefits. Instead, the employer's insurance "carrier has sole authority to act on the employer's behalf in all aspects related to litigation of the claim," *W.Va. Code* § 23-5-1(a) [2009], and to enter final, appealable decisions. *W.Va. Code* § 23-5-1(b).

In response, the claimant argues that a claims representative for an employer's insurance carrier is still, in essence, the representative of the employer. And workers' compensation law specifically allows that representative to "make[] application

9

in writing for a modification of any award previously made to an employee of the employer" – including making an application in writing to modify or terminate temporary total disability benefits. *W.Va. Code* § 23-5-4 [2005].

Furthermore, the claimant argues that *West Virginia Code* § 23-4-1c(h) provides a clear, narrow guideline defining the "overpayment" of temporary total disability benefits. The claimant contends that *W.Va. Code* § 23-4-1c(h) permits the employer or its representative to recover overpayments only when there has been an adjudicated final decision in the employer's favor of an employer's modification or termination of the claimant's receipt of temporary total disability benefits. In this case, neither the employer nor the claims examiner gave the claimant any notice, objection, or appealable order indicating the claimant's benefits should have been terminated in June 2015. The claimant therefore could reasonably have believed the benefits he received after June 2015 were intended for his care and rehabilitation, and neither his employer nor the claims examiner did anything to suggest otherwise. The claimant stresses that, on this record, it is apparent that the claims examiner violated the "systematic [workers' compensation] program for the monitoring of injury claims where the disability continues longer than might ordinarily be expected." *W.Va. Code* 23-4-7a(a). The claimant asserts it violates standards of fairness and due process for an employer to pay a claimant benefits needed to assist in the claimant's rehabilitation and then, without any fault on the part of the claimant, arbitrarily and retroactively declare those benefits as "overpayments."

We reject the employer's arguments that *West Virginia Code* § 23-4-1c(h) is a pointless anachronism. The statute continues to have a strong foundation based in West

Virginia's workers' compensation history. As we discussed in *Butcher v. State Workers'*

*Compensation Commissioner*, 173 W.Va. 306, 315 S.E.2d 563 (1983), prior to the

Legislature's 1974 adoption of the language now found in *W.Va. Code* § 23-4-1c(h),

"payments of temporary total disability benefits were stopped when an employer protested

their continued payment." 173 W.Va. at 309-310, 315 S.E.2d at 567. As a result, "the

handling of temporary total disability claims was a veritable Serbonian Bog of adversarial

proceedings which resulted in temporary total disability claims being litigated over periods

of months or years." 173 W.Va. at 309, 315 S.E.2d at 566. "The ultimate consequence of

this procedure was that an employer's protest would suspend the payment of a claimant's

temporary total disability benefits, which would work substantial economic hardship on

the injured claimant because the adversarial hearings took so long to resolve the issue."

173 W.Va. at 310, 315 S.E.2d at 567. "The most apparent beneficiaries were the lawyers

whose clients could withstand the fee-rigors of the system." 173 W.Va. at 309, 315 S.E.2d

at 566.

In 1974, the Legislature amended *W.Va. Code* § 23-4-1c to expressly restrict

an employer's ability to stymie a claimant's receipt of temporary total disability benefits.

The Legislature also narrowly defined the process under which an employer could recover

overpayments of temporary total disability benefits. The Legislature's 1974 amendment

provided

> that if an employer filed a protest to a temporary total disability
> award, the Commissioner should continue to pay the disability
> benefits during the course of the protest. The amendment also
> provided that if the Commissioner ultimately decided the
> claimant was not entitled to the benefits, the Commissioner

11

should enter an order reimbursing the employer for the overpayment. The Commissioner would then seek to collect the overpayment from the claimant.

173 W.Va. at 310, 315 S.E.2d at 567.

In *Mitchell v. State Workmen's Compensation Commissioner*, 163 W.Va. 107, 256 S.E.2d 1 (1979), this Court made a comprehensive examination of *W.Va. Code* 23-4-1c. We concluded, in Syllabus Point 4, as follows:

The overpayment provisions of W.Va. Code, 23-4-1c, apply only where the Commissioner determines in a W.Va. Code, 23-5-1, proceeding, that the claimant was not lawfully entitled to the temporary total disability benefits originally by virtue of the fact that the claim did not jurisdictionally qualify.

163 W.Va. at 108, 256 S.E.2d at 4. Building upon the Court's reasoning in *Mitchell*, the Court in *Butcher* determined that nothing in *W.Va. Code* § 23-4-1c "authorizes an employer, who has not originally protested the initial award of temporary total disability benefits, to protest subsequent awards of temporary total disability benefits and secure an evidentiary hearing over the continuation of temporary total disability benefits. Such employer's remedy is to file a petition for modification[.]" *Butcher*, 173 W.Va. at 312, 315 S.E.2d at 569-70.

In the decades since *Mitchell* and *Butcher* were decided, the workers' compensation commissioner has been replaced by the insurance commissioner, and adversarial proceedings under *W.Va. Code* § 23-5-1 are now resolved by the Office of Judges rather than a commissioner. Nevertheless, the central proposition of these cases continues to stand: the overpayment provisions of W.Va. Code § 23-4-1c(h) apply only where, after an adversarial proceeding to resolve an employer's attempt to modify or

12

terminate, the claimant is determined to not be lawfully entitled to temporary total disability benefits. Moreover, since its initial adoption in 1974, this statutory overpayment scheme has survived eleven amendments by the Legislature, including the 2009 version of the statute currently disputed by the parties.[3] On this history, we refuse to accept the employer's assertion that the Legislature's 2009 adoption of *W.Va. Code* § 23-4-1c(h) was a pointless act.

"The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syllabus Point 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). When this Court's resolution of an issue requires us to pass upon the meaning of a statute, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995). Well-established rules of statutory construction require that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the

---

[3] The modern overpayment scheme was adopted by the Legislature in 1974. *See Acts of the Legislature 1974*, ch. 145. It has since been amended and reenacted eleven times. *See Acts of the Legislature 1975*, ch. 215; *Acts of the Legislature 1976*, ch. 134; *Acts of the Legislature 1978*, ch. 108; *Acts of the Legislature 1979*, ch. 121; *Acts of the Legislature 1986*, ch. 171; *Acts of the Legislature 1991*, ch. 16; *Acts of the Legislature 1994*, ch. 181; *Acts of the Legislature 1995*, ch. 253; *Acts of the Legislature 2003, 2nd Ex. Sess.*, ch. 27; *Acts of the Legislature 2005, 1st Ex. Sess.*, ch. 4; *Acts of the Legislature 2009*, ch. 222.

13

courts but will be given full force and effect." Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951).

The workers' compensation law at issue in this case plainly expresses the Legislature's intent behind *W.Va. Code* § 23-4-1c(h): once a work-related injury has been ruled compensable and a claimant has been awarded temporary total disability benefits, the claimant continues to receive these benefits until the employer (or it its representative) properly seeks to modify or terminate that award. While the modification or termination is pending or under review (such as by the Office of Judges, the Board of Review, or this Court), the employer (or its insurer) must continue to pay the temporary total disability benefits. If the claimant is later found to not be entitled to the benefits that were paid, then an overpayment legally exists and the employer may seek to recover the overpayment.

In the instant case, the claims examiner had complete control of the claim and of the payment of temporary total disability benefits. We do not know why the claims examiner did not seek to modify and terminate the claimant's benefits at the end of 104 weeks; perhaps it was carelessness, or perhaps it was an act of grace to assist the claimant. All we can say from this record is that the claimant relied to his detriment upon the claims examiner's actions, did not return to the work force, and continued to seek physical rehabilitation for his work-related injury. Because the claims examiner did not seek to modify and terminate the temporary total disability benefits at the end of 104 weeks, as required by the clear language of *W.Va. Code* § 23-4-1c(h), the claims examiner may not seek to recover as overpayments the 156 days of benefits paid beyond that deadline.

14

**IV.**
**CONCLUSION**

The Board of Review concluded in its August 30, 2017, order that the claims examiner's overpayment decision did not violate *W.Va. Code* § 23-4-1c(h). This was clearly an erroneous conclusion of law. The order is therefore reversed and the claim is remanded for further proceedings.

Reversed and Remanded.